1  RITA M. HAEUSLER (SBN 110574)
   rita.haeusler@hugheshubbard.com
2  ROBBY S. NAOUFAL (SBN 302148)
   robby.naoufal@hugheshubbard.com
3  HUGHES HUBBARD & REED LLP
   1999 Avenue of the Stars, 9th Floor
4  Los Angeles, CA 90067-4620
   Telephone: (213) 613-2800
5  Facsimile: (213) 613-2950

6  JAMES W. DABNEY (*pro hac vice* pending)
   james.dabney@hugheshubbard.com
7  JAMES R. KLAIBER (*pro hac vice* pending)
   james.klaiber@hugheshubbard.com
8  LYNN M. RUSSO (*pro hac vice* pending)
   lynn.russo@hugheshubbard.com
9  HUGHES HUBBARD & REED LLP
   1 Battery Park Plaza
10 New York, NY 10004-1482
   Telephone: (212) 837-6000
11 Facsimile: (212) 422-4726

12 ROY LIU (*pro hac vice* pending)
   roy.liu@hugheshubbard.com
13 HUGHES HUBBARD & REED LLP
   1775 I Street, N.W., 5th Floor
14 Washington, DC 20006 2401
   Telephone: (202) 741-4938
15 Facsimile: (202) 729-4798

   Attorneys for Plaintiffs
16 SUZHOU ANGELA ONLINE GAME TECHNOLOGY CO., LTD. and
   IMPERIUM INTERACTIVE ENTERTAINMENT LIMITED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUZHOU ANGELA ONLINE GAME TECHNOLOGY CO., LTD., a Chinese Corporation, and IMPERIUM INTERACTIVE ENTERTAINMENT LIMITED, a Hong Kong Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SNAIL GAMES USA INC., a California Corporation, and WILDCARD PROPERTIES LLC, a Florida Limited Liability Company,<br><br>Defendants. | CASE NO. 2:21−CV−09552 CAS (SKX)<br><br>**PLAINTIFFS' NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT**<br><br>(Declarations of Cheng Ting Kong and James W. Dabney and [Proposed] Order Filed Concurrently Herewith)<br><br>Date: TBD<br>Time: TBD<br>Judge: Hon. Christina A. Snyder<br>Courtroom: 8D |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD HEREIN:

**PLEASE TAKE NOTICE** that Plaintiffs Suzhou Angela Online Game Technology Co., Ltd. ("Angela Game") and Imperium Interactive Entertainment Limited ("IE") (collectively, "Plaintiffs") apply, *ex parte*, for a temporary restraining order ("TRO") and an order to show cause ("OSC") re preliminary injunction against Defendants Snail Games USA Inc. and Wildcard Properties LLC (collectively "Defendants"), ordering Defendants to withdraw forthwith the "take down" demands identified in Exhibit 1 to the accompanying Declaration of James W. Dabney ("Dabney Decl.") and to refrain from any further attempts to induce third-parties to breach contractual obligations owed to Plaintiffs.

Specifically, Plaintiffs request that the Court issue a TRO and OSC re preliminary injunction in the form of the proposed order submitted concurrently with this *ex parte* application. The *ex parte* application invokes 28 U.S.C. §§ 1331, 1651, and 2201-02; Federal Rule of Civil Procedure 65; and Local Rule 65. This *ex parte* application is based upon Plaintiffs' complaint filed December 9, 2021; this Notice; the accompanying Declaration of Cheng Ting Kong sworn to December 17, 2021; the accompanying Declaration of James W. Dabney sworn to December 17, 2021 ("Dabney Decl."); the accompanying Memorandum of Points and Authorities, all accompanying exhibits, all filings in this matter, the Proposed Order, which is being lodged in accordance with Local Rule 7-20, and any and all evidence, argument, or other matters that may be presented at any hearing the Court may hereafter schedule.

Plaintiffs are suffering and, absent immediate relief from the Court, will suffer severe and irreparable harm to their business, customer relations, and reputation with consumers, partners, employees, investors, and others. The conduct of Defendants has induced Plaintiffs' key distributor, Valve Corp. ("Valve"), to breach its distribution agreement with Plaintiffs and thereby to sabotage the launch of Plaintiffs' flagship product, *Myth of Empires*, which has been in development for more than three years

and, within the past 10 days, has had its sales and distribution cut off on the basis of sharply disputed – and as yet wholly unsubstantiated – allegations that some source code supporting *Myth of Empires* supposedly was misappropriated and copied and used by Plaintiffs. Plaintiffs will have no meaningful opportunity to defend this groundless claim without immediate relief from the Court.

The limited relief sought by Plaintiffs would merely require Defendants to bring to this Court, and demonstrate to the satisfaction of this Court, whatever basis they might have for seeking drastic preliminary injunctive relief before the merits of their claims are proven and decided. As is set out in the accompanying Dabney Decl., over the past week Defendants have refused to come forward with even the most basic of evidentiary support for their claim of alleged copyright infringement. Defendants have plainly abused 17 U.S.C. § 512 ("DMCA") to secure the equivalent of a temporary restraining order (TRO) against Plaintiffs without satisfying any of the legal prerequisites to a grant of such extraordinary relief.

Preliminary injunction motions are excluded from Local Rule 7-3's meet and confer requirement. On December 13, 2021, Defendants were requested to withdraw the disputed demands they made to Plaintiffs' suppliers. Dabney Decl. Ex. 1. Defendants delayed responding for an entire week and then, at 6:04 p.m. PST, abruptly announced their refusal and further refused to identify even one supposedly copied module of source code. *Id*. Ex. 4. Defendants are acting to destroy Plaintiffs' market and business by extra-legal means. Every hour's delay in granting relief translates into further significant and irreparable harm to Plaintiffs' business. The Court's urgent, immediate attention is respectfully requested. Pursuant to the Court's procedures, Defendants shall have 48 hours after delivery of the moving papers to serve and file their opposition(s), if any.

| | | |
|---|---|---|
| 1 | DATED: December 17, 2021 | RITA M. HAEUSLER<br>ROBBY S. NAOUFAL<br>HUGHES HUBBARD & REED LLP |
| 2 | | |
| 3 | | JAMES W. DABNEY (pro hac vice pending)<br>JAMES R. KLAIBER (pro hac vice pending)<br>LYNN M. RUSSO (pro hac vice pending)<br>HUGHES HUBBARD & REED LLP |
| 4 | | |
| 5 | | ROY LIU (pro hac vice pending)<br>HUGHES HUBBARD & REED LLP |
| 6 | | By: /s/ Rita M. Haeusler |
| 7 | | Rita M. Haeusler<br>Attorneys for Plaintiffs<br>SUZHOU ANGELA ONLINE GAME<br>TECHNOLOGY CO., LTD. and IMPERIUM<br>INTERACTIVE ENTERTAINMENT LIMITED |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

ARGUMENT ........................................................................................................... 5

I. TRO STANDARD ......................................................................................... 5

II. THE COURT SHOULD ISSUE A TRO TO PRESERVE ITS ABILITY TO RENDER A MEANINGFUL JUDGMENT FOR EITHER PARTY. .......... 7

    A. Plaintiffs Have a Likelihood of Success on the Merits. .............................. 7

    B. Plaintiffs Have Suffered and Will Continue to Suffer Irreparable Harm Unless a TRO Is Granted. ................................................................. 8

    C. Defendants Will Suffer No Harm, Let Alone Irreparable Harm, If the TRO Is Granted. ..................................................................................... 9

    D. Granting the TRO Is in the Public Interest. ................................................. 9

CONCLUSION ...................................................................................................... 10

i

PLAINTIFFS' NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Alliance for Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ............................................................................... 6

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
790 F. Supp. 2d 1024 (N.D. Cal. 2011) ................................................................. 7

*Beyond Blond Productions, LLC v. Heldsman*,
479 F. Supp. 3d 874 (C.D. Cal. 2020) ......................................................... 7, 9, 10

*Design Furnishings, Inc. v. Zen Path, LLC*,
No. 10-2765, 2010 U.S. Dist. LEXIS 135819
(E.D. Cal. Dec. 23, 2010) ................................................................................ 7, 10

*Engelbrecht v. JP Morgan Chase Bank, N.A.*,
No. CV 11-6809 DSF DTBX, 2012 WL 10423236
(C.D. Cal. Feb. 23, 2012) ....................................................................................... 6

*Frontline Med. Assoc., Inc. v. Coventry Healthcare Workers Compensation, Inc.*,
620 F. Supp. 2d 1109 (C.D. Cal. 2009) ................................................................. 5

*Lenz v. Universal Music Corp.*,
572 F. Supp. 2d 1150 (N.D. Cal. 2008) ............................................................... 10

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ................................................................................. 6

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) ............................................................................................... 6

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................................................... 5

**Statutes and Rules**

17 U.S.C. § 512(f) .................................................................................................... 4

28 U.S.C. § 1331 ...................................................................................................... 8

28 U.S.C. § 2201 ...................................................................................................... 7

28 U.S.C. §§ 2201-02 .............................................................................................. 8

Fed. R. Civ. P. 65(b)(1)(A) ...................................................................................... 5

iii

PLAINTIFFS' NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION[1]

Plaintiff Suzhou Angela Online Game Technology Co., Ltd. ("Angela Game") is an independent game developer that was founded in 2019. Angela Game is known to be a passionate, ambitious, and talented studio that seeks to create titles that appeal to hardcore gamers looking for original ideas and engaging gameplay. Imperium Interactive Entertainment Limited ("IE") is Angela Game's indirect parent company. (Angela Game and IE are hereinafter collectively referred to as "Plaintiffs"). After more than three years of hard work involving a team of over 50 software developers, Angela Game launched its multi-player online game "*Myth of Empires*" on November 18, 2021.

In *Myth of Empires*, players build fortresses, lead armies in massive battles, siege enemy cities, and establish their own empire while fighting to survive and earn their place in a war-torn world. Upon its release, *Myth of Empires* was instantly successful and garnered substantial favorable publicity, excellent reviews and ratings, and considerable social media buzz.

Less than two weeks after *Myth of Empires'* highly successful launch to much public acclaim, by letter dated December 1, 2021, Defendants Snail Games USA Inc. and Wildcard Properties LLC (collectively "Defendants"), competitor video game developers, submitted a DMCA takedown notice (the "Valve Letter") to Valve Corporation ("Valve"), one of the principal platforms distributing *Myth of Empires*.[2] The Valve Letter alleges that *Myth of Empires* was built using "stolen source code"

---

[1] The facts recited in this memorandum are fully supported by the accompanying Declaration of Cheng Ting Kong and James W. Dabney filed concurrently herewith.
[2] Defendants are the developers of the online game, "*Ark: Survival Evolved*", among other online games. Defendants launched *Ark: Survival Evolved* in 2017. In the game, players must survive being stranded on an island filled with roaming dinosaurs and other prehistoric animals, natural hazards, and potentially hostile human players. *Ark: Survival Evolved* is also available on Valve's Steam Platform service.

1 and that Valve's distribution of *Myth of Empires* on its Steam platform infringed
2 certain of Defendants' copyrights. These allegations are categorically denied and
3 disputed by Plaintiffs. The isolated fragments of code cited by Defendants are fully
4 consistent with *Myth of Empires* and *Ark: Survival Evolved* having both been
5 constructed using pre-existing objects and algorithmic logic resident in Unreal Engine
6 4 (UE4), a software product licensed by third-party Epic Games.

7       Facing the sudden and imminent destruction of their business by means of an
8 attack on a third-party service provider, Valve, in the United States, Plaintiff acted as
9 rapidly as they could to locate U.S. counsel and seek relief. On December 9, 2021,
10 Plaintiffs commenced this action praying for, among other thing, preliminary
11 injunctive relief against interference with their business. On December 10, 2021,
12 Plaintiffs drew the fact of the lawsuit's pendency to Valve and requested that it restore
13 service to Plaintiffs immediately. Valve refused, citing the "safe harbor" that DMCA
14 provides to service providers who comply with "take down" demands irrespective of
15 whether the demands turn out to be baseless.

16       The following Monday, December 13, Plaintiffs demanded that Defendants'
17 counsel, who actually issued the subject demands to Valve and other suppliers to
18 Plaintiffs, withdraw those demands immediately. Despite the availability of this case
19 and forum to Defendants, Defendants took a full week to reply to Plaintiffs' demand
20 and when they finally did, after the close of business on Friday, December 17,
21 Defendants refused to withdraw their "take down" demands while at the same time
22 not acting to put their purported grievance before this Court. Dabney Decl. Exs. 1-4.

23       Plaintiffs here seek extremely modest relief: withdrawal of "take down"
24 demands without prejudice to Defendants' right to bring before this Court, and prove,
25 with evidence, the sharply disputed claims they have to date used, allegedly illegally,
26 in self-help fashion without any judicial oversight or control. That extra-legal activity
27 needs to stop immediately. Justice delayed truly is justice denied in the circumstances
28 of this case.

Defendants to date have made no showing of likelihood of success on the merits; the balance of hardships overwhelmingly favors the Plaintiffs; and the public interest clearly favors resolution of disputed claims *on their merits*, and by *legal process*, not in the extra-legal fashion that has characterized Defendants' actions to date.

## STATEMENT OF FACTS

*Myth of Empires* is the end-result of a years-long development effort by Angela Game and its dedicated employees dating back to at least 2018. Declaration of Cheng Ting Kong ("Cheng Decl.") ¶ 4. Plaintiff expended over USD $9 million developing *Myth of Empires*. Cheng. Decl. ¶ 4. The source code for *Myth of Empires* is more than 800,000 lines long and is largely written in C++, which is a high-level object-oriented programming language tailored to system programming, with performance, efficiency, and flexibility of use as its design highlights. Cheng. Decl. ¶ 7. It was developed in part using version 4.26 of Unreal Engine (UE 4.26) under license from Epic Games, Inc. Cheng. Decl. ¶¶ 8-10.

Between July 2020 and November 2021, many prototype versions of *Myth of Empires* were made available to the public and featured in news articles and social media posts. Cheng. Decl. ¶¶ 11, 15. In fact, during the "China Joy" trade show held in July 2020, the *Myth of Empires* game was presented and demonstrated to business associates and media partners. Cheng Decl. ¶ 18.

Pursuant to a Steam Distribution Agreement dated 5 July 2020 between IE and Valve, *Myth of Empires* was, until shortly after the Valve Letter, offered, distributed, and made available to end users by Valve via a service known as the Steam Platform. Cheng Decl. ¶ 13. Plaintiffs released *Myth of Empires* for sale to the general public on November 18, 2021. Cheng Decl. ¶ 14. Prior to December 1, 2021, and despite having access to prototypes of *Myth of Empires*, Defendants never complained that *Myth of Empires* infringed Defendants source code or was based on any of their trade secrets. Cheng Decl. ¶ 18.

On or about December 1, 2021, outside counsel for Defendants transmitted a letter to Valve which demanded that Valve "take down all versions of the game title *Myth of Empires* from Valve's Steam Platform." Defense counsel asserted that his clients believed that *Myth of Empires* purportedly "was built by: (1) stealing the *Ark: Survival Evolved* source code and (2) using the stolen source code as the gameplay foundation for *Myth of Empires*." Cheng Decl. ¶ 16. In support of this, Defendants did not include or describe any log entry or other record of their *Ark: Survival Evolved* source code having been copied, uploaded, or downloaded by any supposed source thereof to Plaintiffs. Instead, in their letter, Defendants merely cite to scattered fragments of 527 lines out of the more than 800,000 lines that make up the *Myth of Empires* source code. Cheng Decl. ¶¶ 21-23.

On or about December 4, 2021, Valve removed *Myth of Empires* from its online videogaming platform, Steam.

Under the DMCA, service providers like Valve have a strong incentive to comply with "take down" demands like the one made by Defendants here because doing so invokes a "safe harbor" that insulates them from liability even if a demand turns out to be groundless. The practical result is that opportunistic persons can secure the equivalent of a TRO or preliminary injunction without having to substantiate their claimed right to relief, and with a substantial degree of immunity to liability if a claim is defeated.[3]

The Court can and should act immediately to order Defendants to withdraw the "take down" notices they have issued to Valve and other of Plaintiffs' service providers, and to present this Court with any evidence or argument they may have to justify the imposition of crippling injury on Plaintiffs before discovery, hearing, or trial, and without any showing of injury or loss by Defendants. Given the pendency of

---

[3] Plaintiffs believe the facts of this case are sufficiently egregious as to justify relief under 17 U.S.C. § 512(f), which provides a right of action against persons who made "knowing" misrepresentations.

4

PLAINTIFFS' NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT

this case and forum, Defendants cannot credibly contend that they require assistance from third-party vendors to Plaintiffs in order to obtain meaningful relief for the claims of alleged copyright infringement and trade secret misappropriation they saw fit to make on December 1, 2021, without evidence that any person skilled in the art of UE4 or C++ computer language coding would regard as probative.

As a result of Defendants' demand to Valve, Plaintiffs' sales of their flagship product, *Myth of Empires*, almost immediately went to zero, all cross-selling opportunities evaporated, and an unknown number of potential customers were relegated to other options including possibly Defendants' *Ark: Survival Evolved* game. Cheng Decl. ¶ 27. The continuing delisting of *Myth of Empires* is causing severe and irreparable harm to Plaintiffs' reputations, as has media reportage which Defendants are believed to have actively sought out for their scurrilous allegations. Cheng Decl. ¶¶ 26-30. Plaintiffs have been subjected to negative publicity and social media posts, and their once high employee morale has been decimated, resulting in a loss of productivity and possible loss of highly trained and desirable employees to competitors. Cheng Decl. ¶¶ 27-30, 36-37.

## ARGUMENT

**I.    TRO STANDARD**

A TRO may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

The analysis for a TRO and a preliminary injunction is the same. *Frontline Med. Assoc., Inc. v. Coventry Healthcare Workers Compensation, Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

5

PLAINTIFFS' NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT

Under the Ninth Circuit's "sliding scale" approach to preliminary injunctions, a plaintiff need only show that "serious questions" exist as to success on the merits where the balance of hardships tips sharply in the plaintiff's favor and the plaintiff has demonstrated a likelihood of irreparable harm. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

"Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a 'version of the sliding scale' approach where 'a stronger showing of one element may offset a weaker showing of another.'" *Engelbrecht v. JP Morgan Chase Bank, N.A.*, No. CV 11-6809 DSF DTBX, 2012 WL 10423236, at *1 (C.D. Cal. Feb. 23, 2012) (quoting *Alliance*, 632. F.3d at 1131-35). "Under this approach, a court may issue a preliminary injunction where there are serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff ..., so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* (quoting *Alliance*, 632. F.3d at 1135).

When a party seeks "[a] mandatory injunction [that] orders a responsible party to take action," then "[i]n general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations and internal quotation marks omitted). Nonetheless, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Defendants' DMCA takedown notices, in effect, oust the court of jurisdiction to decide whether any form of interim relief should be granted in this case and, if so, to which parties. Defendants have induced Valve to breach its service agreement with IE

6

PLAINTIFFS' NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT

and threaten to induce similar actions by non-U.S. service providers to Plaintiffs, all this without having satisfied or proved a basis for preliminary injunctive relief.

The relief sought by Plaintiffs here is similar to the relief that Judge Fischer granted in *Beyond Blond Productions, LLC v. Heldsman*, 479 F. Supp. 3d 874 (C.D. Cal. 2020). There as here, a Defendant had induced third parties to cease distribution of the Plaintiffs' products; there as here, a third-party availed itself of the "safe harbor" that DMCA provides to service providers; and the Court issued a preliminary injunction commanding the defendant to withdraw the injury-causing DMCA notice. This Court should do the same here.[4]

## II. THE COURT SHOULD ISSUE A TRO TO PRESERVE ITS ABILITY TO RENDER A MEANINGFUL JUDGMENT FOR EITHER PARTY.

Plaintiffs will not here attempt to guess at what evidentiary basis Defendant might have for asking this Court to grant the type of extraordinary injunctive relief they were able to achieve, without proof, by sending a DMCA notice to Valve. The point for now is: without an order directing Defendants to withdraw its DMCA take down notices, this Court will never have any meaningful opportunity to rule on the merits of the claims alluded to in those notices or to decide whether they justify the severe and irreparable harm that Plaintiffs are suffering *every hour* that Defendants willfully refuse to withdraw their DMCA notices and bring their purported grievance to this Court for resolution.

### A. Plaintiffs Have a Likelihood of Success on the Merits.

The demands made in Defendants' "take down" notices (Dabney Decl. Ex. 1) clearly give rise to an "actual controversy," 28 U.S.C. § 2201, over which this Court

---

[4] *See also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1026 (N.D. Cal. 2011) (noting that the court had previously "issued a preliminary injunction requiring [defendant] to withdraw all DMCA Takedown Notifications..."); *Design Furnishings, Inc. v. Zen Path, LLC*, No. 10-2765, 2010 U.S. Dist. LEXIS 135819, at *31 (E.D. Cal. Dec. 23, 2010) (granting preliminary injunction barring defendant from issuing additional takedown notices with eBay).

7

has subject matter jurisdiction under at least 28 U.S.C. § 1331.  Plaintiffs' complaint in this action puts before this court, for decision, the merits of the purported claims that Defendants used to induce Valve to breach its distribution agreement with IE and literally destroy Plaintiffs' existing market for *Myth of Empires* as described in Exhibits 1 and 2 to the accompanying Chen Decl.

Even on the pre-discovery record of this action, Plaintiffs are highly likely to succeed in establishing that this Court has jurisdiction to hear and determine the merits of the claims alleged in Plaintiffs' complaint.  By their challenged actions, Defendants are acting to oust this Court of jurisdiction and deny Plaintiffs' any meaningful opportunity to defend their legal interests in this Court.

The Court need not take a view on the ultimate merits of the parties' claims in order to conclude that Plaintiffs are likely to succeed on the merits of their claim of right to invoke 28 U.S.C. §§ 2201-02 to establish their federal right to make and use *Myth of Empires* free of adverse claims made by Defendants; however, it bears noting that Defendants have refused Plaintiffs' invitation to identify up to five (5) modules of allegedly copyrighted *Ark: Survival Evolved* source code and any supposedly corresponding modules of *Myth of Empires* source code.  *See* Dabney Decl. Exs. 1-4.  The existing record of this case provide no basis for holding that Defendants are likely to succeed on the merits of any claim against Plaintiffs.

**B.    Plaintiffs Have Suffered and Will Continue to Suffer Irreparable Harm Unless a TRO Is Granted.**

*Myth of Empires* is Plaintiff's sole product, and the loss of sales due to Defendants' actions places Plaintiffs in severe, potentially fatal financial straits.

As set forth in the accompanying Cheng Decl., the source code for *Myth of Empires* was developed over a 3+ year period and owes no intellectual debt to these Defendants or to any *Ark: Survival Evolved* source code that Defendants might someday identify and show embodies original authorship in which Defendants hold a registered claim to copyright protection.  At the same time, the Cheng Decl. details the

devastating economic, reputational, and personal losses that Defendants' groundless claims have caused and are causing to Plaintiffs.

### C. Defendants Will Suffer No Harm, Let Alone Irreparable Harm, If the TRO Is Granted.

Defendants, on the other hand, to date have made no showing that they would suffer irreparable or indeed any harm if they had to present their purported claims to this Court, as opposed to resorting to self-help remedies outside of court, or if they had to wait until trial to recover for the purported claims for copyright infringement and trade secret misappropriation that they made to Plaintiffs' service providers including Valve. The Cheng Decl. describes how prototype versions of *Myth of Empires* were available to the public, and displayed at major video game industry trade shows, for some 18 months prior to December 1, 2021, during all of which time these Defendants voiced no objection to the game or its distribution. Defendants' conduct is, here again, inconsistent with that of a litigant entitled to equitable relief.

While Defendants can avail themselves of various remedies under the DMCA if infringement is ultimately found, Plaintiffs have no recourse to recover for their financial losses except before this Court. The Copyright Act provides for a panoply of monetary remedies for proven infringement. Defendants have not even attempted to show that they lack any adequate monetary remedy for the alleged infringement or use of unspecified trade secrets alluded to in their "take down" notices. This omission weighs in favor of granting the TRO.

### D. Granting the TRO Is in the Public Interest.

And the public interest in having civil disputes resolved on their merits, in accordance with law, strongly supports a grant of the TRO sought by Plaintiffs. There is also a public interest in the stability of contractual obligations against third-party attempts to induce breaches thereof as a form of extra-legal self-help.

As Judge Fischer did in *Beyond Blond*, the Court here should act to preserve its own jurisdiction to decide whether Plaintiffs have the right to distribute *Myth of*

*Empires* free of the doubtful and sharply dispute claims that Defendants have seen to put forward in private correspondence directed to suppliers of critical services to the Plaintiffs.

Plaintiffs' requested injunction "is consistent with the statutory scheme set up by the DMCA" in that "Congress encouraged rightsholders to bring any disputed copyright claims to court and not rely solely on DMCA notifications to pursue alleged infringers." *Beyond Blond*, 479 F. Supp. 3d at 889. Further, "the unnecessary removal of non-infringing material causes significant injury to the public" because they cannot access the works. *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1156 (N.D. Cal. 2008); *see also Design Furnishings, Inc. v. Zen Path, LLC*, 2010 WL 5418893, at *8 (E.D. Cal. Dec. 23, 2010) ("the public interest is in fact benefitted by granting a preliminary injunction, because absent eBay's policies, designed to avoid eBay's liability for intellectual property infringement, it would be the claimed copyright holder who would bear the burden of proving the copyright infringement.").

Here, as in *Beyond Blond*, the harm to Plaintiffs caused by Defendants' actions, and the prevention of the public from accessing a popular new game, greatly outweighs any harm to Defendants if the game is reinstated.

## CONCLUSION

Plaintiffs' requested TRO, awarding narrowly tailored relief to preserve the Court's jurisdiction, should be granted forthwith. The Court should further set an early hearing on whether the TRO should be converted into a preliminary injunction.

| | |
|---|---|
| DATED: December 17, 2021 | RITA M. HAEUSLER<br>ROBBY S. NAOUFAL<br>HUGHES HUBBARD & REED LLP<br><br>JAMES W. DABNEY (pro hac vice pending)<br>JAMES R. KLAIBER (pro hac vice pending)<br>LYNN M. RUSSO (pro hac vice pending)<br>HUGHES HUBBARD & REED LLP<br><br>ROY LIU (pro hac vice pending)<br>HUGHES HUBBARD & REED LLP<br><br>By: /s/ Rita M. Haeusler<br>Rita M. Haeusler<br>Attorneys for Plaintiffs<br>SUZHOU ANGELA ONLINE GAME TECHNOLOGY CO., LTD. and IMPERIUM INTERACTIVE ENTERTAINMENT LIMITED |

11

PLAINTIFFS' NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT

# DECLARATION OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and am not a party to this action. My business address is 1999 Avenue of the Stars, 9th Floor, Los Angeles, CA 90067.

On December 17, 2021 I served the within document(s) described as:

**PLAINTIFFS' NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT**

on the interested parties in this action as stated below:

Robert M. Schwartz
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, Tenth Floor
Los Angeles, CA 90017
Email:
robertschwartz@quinnemanuel.com

☑ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a true copy of the document to be sent to the persons at the corresponding electronic address as indicated above on the above-mentioned date.

and

| | |
|---|---|
| Wildcard Properties LLC<br>8383 158th Avenue, Suite 200<br>Redmond, WA 98052-3838 | Snail Games USA Inc.<br>12049 Jefferson Boulevard<br>Culver City, CA 90230 |

☑ **BY OVERNIGHT DELIVERY:** I placed a true copy of the document in a sealed FedEx envelope or package addressed as indicated above on the above-mentioned date in Los Angeles, California, with fees for overnight delivery paid or provided for.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 17, 2021 at Los Angeles, California.

*/s/ Robby S. Naoufal*
Robby S. Naoufal

PROOF OF SERVICE

101945990