QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Michael LaFond (Bar No. 303131)
michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood City, CA 94065
Telephone: (650) 801-5000

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiff,*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZHOU ANGELA ONLINE GAME TECHNOLOGY CO., LTD and IMPERIUM INTERACTIVE ENTERTAINMENT LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>SNAIL GAMES USA INC. and WILDCARD PROPERTIES LLC,<br><br>Defendants, | Case No. 2:21-cv-9552-CAS<br><br>**DECLARATION OF CHRISTOPHER RUCINSKI IN OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| SNAIL GAMES USA INC.,<br><br>Counterclaimant,<br><br>vs.<br><br>SUZHOU ANGELA ONLINE GAME TECHNOLOGY CO., LTD; and IMPERIUM INTERACTIVE ENTERTAINMENT LIMITED,<br><br>Counterclaim Defendants, | |

1
2  SNAIL GAMES USA INC.,
3           Third Party Plaintiff,
4     vs.
5  TENCENT CLOUD LLC,
6           Third Party Defendant.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DECLARATION OF CHRISTOPHER RUCINSKI

I, Christopher Rucinski, declare as follows:

1. I am the Managing Director of Elysium Digital, LLC ("Elysium Digital"), a subsidiary of Aon Corporation ("Aon"). My business address is 53 State Street, Suite 2201, Boston MA 02109. I have personal knowledge of the matters stated in this declaration and if called as a witness, I would testify competently thereto.

2. My subject matter expertise includes computer science generally, and I have been admitted in federal court as an expert in computer source code analysis, data analysis, and digital evidence collection.

3. I graduated *cum laude* with an A.B. in Computer Science from Princeton University in 2010, and in 2015, I obtained the GCFE (GIAC[1] Certified Forensic Examiner) certification, which I renewed in 2019. In 2010, I began working at Elysium Digital as a computer scientist, and I continued to work there until Elysium Digital was acquired in 2015 by Stroz Friedberg. I continued to work at Stroz Friedberg until it was acquired by Aon in 2016, and I have worked at Aon since then, now through its subsidiary Elysium Digital.

4. At Elysium Digital, Stroz Friedberg, and Aon, I have consulted on more than 100 technical matters to date, most of which have involved computer source code analysis. I have offered expert opinions about the operation of computer source code, and I have testified about the operation of computer source code several times in the last several years. I have also provided technical consulting services for the Federal Trade Commission.

5. In the past I have consulted with Epic Games, Inc. ("Epic") in a legal dispute involving computer source code analysis and computer source code

---

[1] "GIAC" stands for Global Information Assurance Certification: http://www.giac.org.

comparison related to a distribution of the Unreal Engine, an extensive video game development software framework created by Epic. I have also reverse-engineered executable software distributions, including executable software distributions relating to video games in the context of a legal dispute, using such reverse engineering tools such as IDA Pro.

6. My current *curriculum vitae* is attached hereto as **Exhibit A**.

7. Given the immediacy of Plaintiffs' recently filed temporary restraining order application in the above-captioned litigation ("Litigation"), I have not reviewed or analyzed any software executables or original computer source code provided by the parties in this Litigation. I have also not reviewed any computer source code provided by Plaintiffs Angela and Imperium (collectively, "Angela") since it is my understanding that Angela has not provided such computer source code to Defendants Snail USA and Wildcard Studios (collectively, "Wildcard"). I reserve the right to revise my opinions in response to new documents or information provided during this Litigation.

8. I have reviewed the document titled "'Ark'/'ATLAS' game codebase found in 'Myth of Empires' v3" dated December 12, 2021 ("Wildcard Analysis"), which is attached hereto as **Exhibit B**. This was provided to me by Wildcard's counsel, and I understand from counsel that it is an analysis conducted by Wildcard employees.

9. While not dispositive due to its necessarily limited scope, since I understand that Wildcard does not have access to Angela's computer source code for Angela's software products, on its face the assessment in the Wildcard Analysis establishes a reasonable methodology for identifying similarities between Wildcard's and Angela's software products that indicate that Angela's software products may have been derived from Wildcard's software products.

10. If the analysis in the Wildcard Analysis has been performed as it describes, the volume of similarly named entities in the Wildcard and Angela

executable software files, as well as the order and structure in which some of those similarly named entities appear in both Wildcard's and Angela's executable software files, indicate that if analysis of the underlying computer source code were performed, more substantial similarities are likely to be discovered. The extent of similarities already identified in the Wildcard Analysis raises serious concerns that computer source code for the Angela software products was copied from computer source code for the Wildcard software products.

11.  I understand that Angela contends that some of the similarities identified in the Wildcard Analysis are the result of common third-party software libraries or frameworks to which both Wildcard and Angela have legitimate access. Specifically, both Wildcard's and Angela's software products appear to use the Unreal Engine, an extensive video game development software framework created by Epic. Epic documents portions of the Unreal Engine online in a searchable manner, for example at https://docs.unrealengine.com/4.26/en-US/ ("Epic Online Documentation"), which includes a search field where one may search for entities that are used in the Unreal Engine. A PDF printout of the Epic Online Documentation is attached hereto as **Exhibit C**. As an example of documentation of an entity used in Unreal Engine, the AArchVisCharacter class is documented at https://docs.unrealengine.com/4.26/en-US/API/Plugins/ArchVisCharacter/AArchVisCharacter/ , and a PDF printout of that documentation is attached hereto as **Exhibit D**.

12.  However, the Wildcard Analysis does not support a conclusion that the similarities identified in the Wildcard Analysis are the result of common use of the Unreal Engine in Wildcard's software products and Angela's software products. If the classes identified in the Wildcard Analysis were defined in Unreal Engine, then one would expect to find at least some of them documented in the Epic Online Documentation. On December 20, 2021, I searched the Epic Online Documentation for the primary classes identified in the Wildcard Analysis and did not find

documentation for any of them that was similar to that of the AArchVisCharacter class. This supports the conclusion that the similarities identified in the Wildcard Analysis are not the result of the fact that both Wildcard's and Angela's software products make use of the Unreal Engine. For the avoidance of doubt, the classes that I searched for are listed in **Exhibit E**, attached hereto.

13. The best way to identify similarities between Wildcard's and Angela's software products that may indicate that Angela's software products have been derived from Wildcard's software products, and to what extent that is the case, is to analyze the actual computer source code of the products at issue. While reverse engineering analysis such as that documented in the Wildcard Analysis may be helpful in determining whether computer source code review is merited, computer source code review is preferable. Computer source code review allows for one to examine the similarities between two bodies of human readable computer source code before they are converted to executable programs intended to be read by computers rather than humans. Examining all of the computer source code of two such software products rather than just small pieces is also important because similar portions of computer source code might be moved around in the computer source code over time as it is being developed. Finally, it is important to also examine historical versions of computer source code in such products since if computer source code from one product is incorporated into another product, over time that computer source code may be edited so much that it no longer resembles its original source.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration is executed this 21st day of December 2021 in Somerville, Massachusetts.

By _____
Christopher Rucinski