1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Robert M. Schwartz (Bar No. 117166)
2  robertschwartz@quinnemanuel.com
   Daniel C. Posner (Bar No. 232009)
3  danposner@quinnemanuel.com
   865 S. Figueroa Street, 10th Floor
4  Los Angeles, CA 90017
   Telephone:  (213) 443-3000
5
   Michael LaFond (Bar No. 303131)
6  michaellafond@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
7  Redwood City, CA 94065
   Telephone:  (650) 801-5000
8
   *Attorneys for Defendants, Counter-*
9  *claimants, and Third-Party Plaintiff,*

10                 **UNITED STATES DISTRICT COURT**

11                 **CENTRAL DISTRICT OF CALIFORNIA**

12  SUZHOU ANGELA ONLINE GAME
    TECHNOLOGY CO., LTD and          Case No. 2:21-cv-9552-CAS-SK
13  IMPERIUM INTERACTIVE
    ENTERTAINMENT LIMITED,           **DEFENDANTS' RESPONSE TO**
14                                   **PLAINTIFFS' "SUR-REPLY" RE:**
                                     **MOTION FOR PRELIMINARY**
15          Plaintiffs,              **INJUNCTION**

16      vs.                          Judge: Hon. Christina A. Snyder
                                     Date: January 31, 2022
17  SNAIL GAMES USA INC. and         Time: 10:00 a.m.
    WILDCARD PROPERTIES LLC,         Courtroom: 8D
18
            Defendants,
19  ─────────────────────────────
20  SNAIL GAMES USA INC.,

21          Counterclaimant,

22      vs.

23  SUZHOU ANGELA ONLINE GAME
    TECHNOLOGY CO., LTD; and
24  IMPERIUM INTERACTIVE
    ENTERTAINMENT LIMITED,
25
            Counterclaim
26          Defendants,

27

28

                                     Case No. 2:21-cv-9552
   ─────────────────────────────────────────────────────────
   RESPONSE TO PLAINTIFFS PRELIMINARY INJUNCTION SUR-REPLY

1    SNAIL GAMES USA INC.,

2              Third Party Plaintiff,

3        vs.

4    TENCENT CLOUD LLC,

5              Third Party Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' RESPONSE TO PLAINTIFFS' "SUR-REPLY"

### A.    Plaintiffs Need To Drop The "Fraudulent" Rhetoric.

To deflect attention from its misconduct, Angela accuses Defendants of having made a "fraudulent" comparison of Defendants' *Ark* source code to Angela's *Myth of Empires* ("*MoE*") code to support Defendants' DMCA takedown notices, by stating that Defendants' evidence is based on the code being copied in "the same order." Sur-Reply at 1-3.  That is a sideshow.  Defendants' DMCA notice—the basis for Plaintiffs' requested injunction—makes no mention or claim about "order." *See* Dkt. 1 at Ex. 1.  Nor was it in Defendants' declarations or exhibits.  The order of headers does not drive or even relate to the code's functionality.  Only the code definitions do, and Angela copied those.  *See* Dkt. 41-4, Stieglitz Decl. ¶ 39. Angela's accusations focus on just one line in the legal summary, not the extensive evidence of copied code in the exhibits, which was impeded because Angela alone has the native code.  *Id.* ¶¶ 17, 22, 28-29.  And although the Supplemental Stieglitz and Rucinski Declarations (Dkt. 41-4 & 41-2) rebutted these inflammatory and untrue allegations, point-by-point, Angela has never responded.

Angela's potshots also ignore the mass of other evidence of its extensive copying of *Ark* code that Mr. Stieglitz found, including nearly 600 other similarities. *See* Stieglitz 12/21/2021 Decl. ¶ 12 & Ex. A; 1/21/2022 Decl. ¶ 27.  Angela also ignores the expert declaration of Chris Rucinski (Dkt. 29-16) in which he states that Mr. Stieglitz's review method was reasonable, that there are disturbing similarities between the code, and that they do not arise from the fact that both games run on the Unreal Engine.  *Id*. ¶¶ 9, 10 & 12.  Angela ignores the second Rucinski Declaration (Dkt. 41-2, 1/21/2022) that rebuts Mr. Yang's efforts to explain the similarities.  *Id.* ¶¶ 30-54.  Mr. Yang's third declaration addresses ***none*** of this evidence.

The only testimony on similarities that Mr. Yang now addresses came from Bastian Suter, creator of the anti-cheating BattlEye software whose implementation code, which Wildcard wrote for *Ark*, mysteriously shows up in *MoE*.  *See* Dkt. 21-

13, Suter Decl., ¶¶ 4-7.  To explain its presence, Mr. Yang now says that the code is "BattlEye's own callback API function provided to licensees."  Third Yang Decl. ¶ 10.  But that is not true.  Mr. Yang has now twice ducked Mr. Suter's testimony stating that he found BattlEye implementation code in *MoE* that was written by Wildcard (not BattlEye), that is specific to *Ark*, that has the same typos, that is not publicly available, and that BattlEye never gave it to Angela.  *See* Suter Supp. Decl. ¶¶ 14-15.  As Mr. Suter explains in a short sur-reply declaration, only Angela's copying can explain these facts.  *See* Suter Sur-Rep. Decl., ¶¶ 3-12.  Mr. Yang can't. Given this evidence, Angela needs to drop its false accusations of "fraud."

## B.    **Plaintiffs Are Wrong: *They* Bear The Burden Of Proof.**

Plaintiffs attack Defendants for "attempting to shift the burden of proof" to Plaintiffs.  (Dkt. 49 at 3.)  Defendants are not attempting to shift anything; the burden has always been with Plaintiffs, as the moving parties.

Plaintiffs misread *Beyond Blond Prods., LLC v. Heldsman*, 479 F. Supp. 3d 874 (C.D. Cal. 2020).  As here, the plaintiff responded to a DMCA takedown notice by suing the copyright owner for a declaration of non-infringement.  It moved for a preliminary injunction ordering the defendant to withdraw the DMCA notice.  *Id.* at 879.   Judge Fischer wrote: "Plaintiff has also rebutted the evidence provided by Defendant … and met ***its*** burden of showing that the ***facts clearly favor*** its independent creation."  *Id.* at 884 (emphasis added).  The party seeking to force the withdrawal of a DMCA notice bears the burden of proof, and the burden is that the facts and law "clearly favor" the moving party.  The case ***refutes*** Plaintiffs' position.

Plaintiffs attack Defendants for not distinguishing *Medtronic Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014).  Dkt. 49 at 3.  But *Medtronic* does not examine preliminary relief, and does not shift the burden of proof to Defendants. *Medtronic* held only that the owner of intellectual property must prove infringement to obtain a *final* judgment against an infringer.  *Id.* at 198.  Defendants are not seeking a judgment or any relief here.  Plaintiffs are.

And as the Court recognized in its December 23 Minute Order (Dkt. 34 at 5), Plaintiffs mandatory injunction requires a heightened showing.  They must prove that any "irreparable harm" is "extreme or very serious damage" not "capable of compensation in damages."  *Marlyn Nutrac., Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  Plaintiffs must also show that the "law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed."  *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (emphasis in original).

Plaintiffs cannot meet this "clearly favors" standard simply by showing that relevant "issues are subject to significant factual disputes."  *See Sung-Miller v. Regents of Univ. of Cal.*, 2020 WL 3628710, at *3 (C.D. Cal. Mar. 16, 2020).  If that is the state of the evidence, Plaintiffs lose.

### C.     **Plaintiffs Have *Not* Met Their Heavy Burden.**

***Irreparable Harm***.  Plaintiffs have failed to show "extreme or very serious damage" that amounts to irreparable harm.  Plaintiffs tried to make that showing with the first Declaration of Cheng Ting Kong (Dkt. 15-2).  But the Court found his declaration insufficient because his "conclusory statements" did not show how "money damages would be inadequate."  Order Denying TRO, Dkt. 34 at 6.

In the Second Yang Declaration (Dkt. 38-1, Jan. 14, 2022), Plaintiffs relied on alleged harms from lost sales, lost financing, etc.  (*Id.* ¶¶ 26-28.)  Mr. Yang showed how he could quantify the amount.  *Id.*  That means they are not irreparable.

What's left?  Plaintiffs fret about harm to employee "morale" from "mean" online comments about the claims in this lawsuit.  *See* Yang Second Decl. ¶¶ 29-32.  That is insufficient as a matter of law.  *See Lilith Games Co. Ltd. v. UCool, Inc.*, 2015 WL 5591612, at *11 (N.D. Cal. Sept. 23, 2015) ("the Court is not convinced that anecdotal comments on the Internet establish a likelihood of irreparable harm").

By resuming the sale of their game without telling the Court, Plaintiffs misled on the issue of injury.  *See* Schwartz Supp. Decl. ¶ 7 (noting that Plaintiffs have been selling *MoE* at https://store.mythofempires.com since mid-January).

1       Mr. Yang now says this "is in no way inconsistent" with his prior testimony

2   that "Due to the game's removal from the Steam store, new players are not able to

3   purchase the game."  Dkt. 38-1, Ex. 46 at 229.  But it is.  Mr. Yang admits Angela is

4   selling the game on its own website, without regard for the DMCA.  Dkt. 49-1 at ¶¶

5   5-6, Ex. 1.  At $30 each, selling 250 copies twice a day, yields Angela $450,000 per

6   month.  And nothing prevents it from lifting its self-imposed 250-copy cap.

7       ***The Merits: Similarity***.  Angela's last brief says nothing about whether the

8   facts and law "clearly favor" it on the merits.  As noted above, the evidence that *Ark*

9   code is present in Angela's game means that Angela cannot do so.

10      And even if the Court were to discount ***all*** of Defendants' evidence, Angela

11  has admitted that, sight unseen, 0.6% of its *MoE* code overlaps with *Ark*'s code.  *See*

12  Pls.' Supp. Mem. of Law, Dkt. 38, at 11.  That's 4,800 lines.  That quantity is more

13  than sufficient to support infringement.  *See Brocade Commc'ns Sys., Inc. v. A10*

14  *Networks, Inc.*, 2013 WL 831528, at *8 (N.D. Cal. Jan. 10, 2013) (affirming $60

15  million verdict based on copying 145 lines of code, or 0.00145%).  And as Plaintiffs

16  admitted in Angela's August Declaration, Defendants have found similarities in

17  *MoE* code in long and uncommon strings of words.  *See* Dkt. 38-2, Ex. C.

18      To invite the Court to infer that Angela might be exonerated from a

19  comprehensive comparison of the two games' source code, it accuses ***Defendants*** of

20  "stalling and delay" in having qualified experts perform that task.  *See* Angela Sur-

21  Reply at 2.  That is laughable.  Since early December, Defendants have proposed

22  ***five*** times that the parties submit their code to neutral experts for review and Angela

23  did not respond until January 12, to decline.  *See* Supp. Schwartz Decl. (Dkt. 41-24)

24  ¶¶ 5-6.  In the interim, and as Defendants' expert explained in his January 21

25  declaration, Angela proposed using an untested tool that lacked the capacity to

26  perform the functions necessary here.  *See* Dkt. 41-2 ¶¶ 17-29.  Angela's sur-reply

27  did not address that.  Instead, Angela would prefer to litigate the code comparison.

28  Sur-Reply at 2.  It has that right.  And Defendants have the right to be skeptical that

1  Angela will provide an un-doctored version.  Regardless, had Angela agreed in early

2  December to a neutral review, the process might have been completed by now.

3  Angela is way out of line in bemoaning any delay in this process.

4      ***Merits: Copying***. Without discovery, Defendants have been unable to fully

5  test Mr. Yang's denials that he copied *Ark*'s code.  But given the discrepancies and

6  omissions in all three of his declarations, the Court can disregard them.  ***Fact***: on

7  December 23, Mr. Yang swore that Snail's "code was stored on servers that could

8  only be accessed by certain workstations" and that he never possessed the *Ark* code

9  "in any form."  Dkt. 33-1 ¶¶ 3 & 9.  But when Snail USA's CEO pointed out that

10 Mr. Yang had copied the code to his laptop in 2016 (Dkt. 41-13 ¶ 20), Mr. Yang can

11 say now only that he surrendered the laptop when he quit.  Dkt. 49-1, ¶ 8.  He has

12 failed to account for what happened to the *Ark* code between 2016 and 2019.  That

13 is critical because Angela started developing *MoE* in ***2018***.  Kong Decl., Dkt. 15-2,

14 ¶ 4.  ***Fact***: On December 23, Mr. Yang swore that he had "never transferred" any

15 copy to any person.  Dkt. 33-1 ¶¶ 9 & 10.  But his own email confirms that he

16 downloaded it in 2018.  Dkt. 41-22, Ex. I.  ***Fact***: Mr. Yang swore that *MoE* was

17 Angela's "only source of revenue."  Dkt. 38-1, Ex. 46.  But its *Iron Conflict* game

18 has been available on Steam https://store.steampowered.com/app/1371480/Iron_

19 Conflict/, where Angela generates revenue from in-game purchases.

20      Given these misstatements and discrepancies in Mr. Yang's testimony, and

21 those noted above, he cannot be believed.

22      The Court should deny Angela's motion.

23 DATED:  January 31, 2022          Respectfully submitted,

24

25                                    QUINN EMANUEL URQUHART
                                         & SULLIVAN, LLP
26                                    By _____

27                                       Robert M. Schwartz
                                      *Attorneys for Defendants/Counterclaimants/*
28                                    *Third-Party Plaintiff*