UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | January 31, 2022 |
|---|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Catherine Jeang | Katie Thibadeaux | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| James Dabney | Robert Schwartz |
| James Klaiber | Daniel Posner |
| Lynn Russo | Michael LaFond |
| Rita Haeusler | |

**Proceedings:**     ORDER TO SHOW CAUSE AS TO WHY A PRELIMINARY
INJUNCTION SHOULD NOT BE ISSUED (Dkt. 34, issued on
December 23, 2021)

**I.     INTRODUCTION**

On December 9, 2021, plaintiffs Suzhou Angela Online Game Technology Co.,
Ltd. ("Angela Games") and Imperium Interactive Entertainment Limited ("Imperium")
filed the instant action against defendants Snail Games USA Inc. ("Snail Games") and
Wildcard Properties LLC ("Wildcard").  See Dkt. 1 ("Compl.").  Angela Games is the
developer and owner of a videogame entitled "Myth of Empires."  Id. ¶ 6.  Until recently,
Myth of Empires was "offered, distributed, and made available to end users" by the
Valve Corporation ("Valve"), a third-party platform.  Id. ¶ 9.  On or about December 1,
2021, defendants sent a letter to Valve alleging that Myth of Empires was built "with
trade secret source code copied and stolen" from defendants.  Dkt. 1, Ex. 1 ("Valve
Letter") at 2.  Based on the Valve Letter, Valve ceased distributing Myth of Empires on
or about December 7, 2021.  Compl. ¶ 15.  Plaintiffs allege that their business has been
injured and irreparably harmed by defendants' actions in causing Valve to cease
distribution of Myth of Empires.  Id. ¶¶ 16, 23, 29.

Plaintiffs' complaint alleges the following claims for relief: (1) Declaratory
Judgment of Non-Liability for Copyright Infringement; (2) Declaratory Judgment of
Non-Liability for Trade Secret Misappropriation; and (3) Violation of 17 U.S.C. §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

512(f).[1]  Id. ¶¶ 6-30.  Plaintiffs seek preliminary and permanent injunctions "directing Defendants to withdraw [the Valve Letter] and any other takedown notice Defendants may have sent to any distributor of Myth of Empires and restraining Defendants from interfering with the distribution of Myth of Empires."  Compl. at 5.

On December 20, 2021, defendants answered plaintiffs' complaint.  Defendants also filed a counterclaim against plaintiffs and a third-party complaint against Tencent Cloud LLC ("Tencent").[2]  Dkt. 27 ("Ans.").  Defendants claim that Angela Games "stole the extraordinarily valuable source code" they created for their game Ark: Survival Evolved in order to create Myth of Empires.  Id. ¶¶ 2-5.  Defendants submitted copyright registrations for Ark: Survival Evolved, and allege that in November 2018, a former employee of Snail Games' China-based parent obtained access to the Ark: Survival Evolved source code and copied it.  Id. ¶ 4.  In March 2019, this employee quit Snail Games' parent and began to work at Angela Games.  Id.  Defendants also allege that "[o]f [the] 82 Angela [Games] employees listed in the credits for Myth of Empires, 60 of them are ex-employees of Snail (China).  Many quit in 2019 and 2020 to join Angela [Games]."  Id. ¶ 10.

Defendants also claim that Myth of Empires is the same genre as Ark: Survival Evolved, that a preliminary review found that the source code for Myth of Empires has the same headers in the same order as the source code for Ark: Survival Evolved, and that non-functional portions of the Ark: Survival Evolved's source code are embedded in Myth of Empires' source code.  Id. ¶¶ 5-7.  Defendants bring the following counterclaims for relief: (1) Direct Copyright Infringement (alleged by Snail Games against Angela Games and Imperium); (2) Contributory Copyright Infringement (alleged by Snail Games against Imperium); (3) Vicarious Copyright Infringement (alleged by Snail Games against Imperium); (4) Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (alleged by Wildcard and Snail Games against Angela Games and

---

[1] 17 U.S.C. § 512(f) provides that "any person who makes knowing, material misrepresentations in filing a DMCA takedown notice 'shall be liable for any damages, including costs and attorneys' fees[ ] incurred by the alleged infringer.'"  Automattic Inc. v. Steiner, 82 F. Supp. 3d 1011, 1017 (N.D. Cal. 2015) (quoting 17 U.S.C. § 512(f)).
[2] Tencent is a company that allegedly continues to host Myth of Empires on its server despite receiving a DMCA takedown notice from defendants.  Ans. ¶ 36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                 **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

Imperium); and (5) Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. (alleged by Wildcard and Snail Games against Angela Games and Imperium).  Id. ¶¶ 58-103.

Defendants also bring a third-party claim against Tencent for the failure cease distribution of Myth of Empires on its servers "despite having received a DMCA notice" from defendants.  Id. ¶ 112.  Snail Games brings the following third-party claims for relief against Tencent: (1) Direct Copyright Infringement; (2) Contributory Copyright Infringement; and (3) Vicarious Copyright Infringement.  Id. ¶¶ 114-137.

On December 17, 2021, plaintiffs filed an ex parte application for a temporary restraining order and for an order to show cause regarding preliminary injunction against defendants.  Dkt. 15 ("TRO").  Plaintiffs ask the Court to order defendants to withdraw the Valve letter and any other "take down" demands, and "to refrain from any further attempts to induce third-parties to breach contractual obligations owed to Plaintiffs."  Id. at 2.  Plaintiffs "categorically den[y]" that Myth of Empires was built using stolen source code.  Id. at 8-9.  They claim that the similarities in isolated fragments of code cited by defendants in the Valve Letter are fully consistent with plaintiffs' game Myth of Empires and defendants' game Ark: Survival Evolved "having both been constructed using [the] pre-existing objects and algorithmic logic resident in Unreal Engine 4 (UE4), a software product licensed by third-party Epic Games."  Id.  Plaintiffs seek withdrawal of defendants' take down notices "without prejudice to Defendants' right to bring before this Court, and prove, with evidence, the sharply disputed claims they have to date used . . . in self-help fashion without any judicial oversight or control."  Id. at 9.

On December 21, 2021, pursuant to an agreement between the parties, defendants filed their opposition.  Dkt. 29 ("Opp.").  Defendants argue that plaintiffs' request for emergency relief "seeks not to preserve the status quo," but to "drastically change the status quo."  Opp. at 7.  Defendants also argue that plaintiffs' application for a TRO fails because "even though Angela [Games] bears the burden of establishing a likelihood of success on the merits, [Angela Games'] application ignored the merits."  Id. at 8.  Finally, defendants claim that the evidence shows that Angela Games "stole the source code for [defendants'] successful video game, Ark: Survival Evolved [], repackaged it into a pirated version, and released it last month under the title Myth of Empires."  Id. at 7-8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

On December 23, 2021, plaintiffs submitted their reply in support of their application for a temporary restraining order and for an order to show cause regarding preliminary injunction against defendants.  Dkt. 33 ("Reply").

On December 23, 2021, the Court denied plaintiffs' request for a temporary restraining order, issued an order to show cause as to why a preliminary injunction should not be issued, and ordered supplemental briefing.  Dkt. 34.

On January 14, 2022, plaintiffs submitted their supplemental brief in support of the issuance of preliminary injunction.  Dkt. 38 ("Plfs. Supp.").  On January 21, 2022, defendants submitted their supplemental brief in opposition to the issuance of a preliminary injunction.  Dkt. 41 ("Defs. Supp.").

On January 28, 2022, plaintiffs filed a sur-reply in support of the issuance of a preliminary injunction.  Dkt. 49 ("Plfs. Sur-Reply").  That same day, defendants moved to strike plaintiffs' sur-reply as violative of the briefing schedule the Court set in its December 23, 2021, order on plaintiffs' application for a temporary restraining order.  Dkt. 50.  On January 28, 2022, the Court denied the motion to strike, and permitted defendants to file an optional response, not to exceed five pages.  Dkt. 51.  On January 30, 2022, defendants submitted their response to plaintiffs' sur-reply.  Dkt. 44 ("Defs. Sur-Reply Resp.").

The Court held a hearing on January 31, 2022.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Wildcard began developing Ark: Survival Evolved in 2014, and invested over $90 million in its development.  Opp. at 9 (citing Dkt. 29-1 (Declaration of Jeremy Stieglitz ("Stieglitz Decl.")) ¶ 6).  Defendants claim they have taken precautions to protect the source code of Ark: Survival Evolved, including requiring employees to sign employment contracts "in which they promised to maintain the source code in confidence," and storing the source code "on a secure server that could be accessed by only those employees who were given login credentials."  Opp. at 9-10 (citing Dkt. 29-6 (Declaration of Jim Shun Tsai ("Tsai Decl.")) ¶ 4).  Defendants published an "early access" version of Ark: Survival Evolved on Valve's platform on June 2, 2015.  Opp. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                              'O'

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | January 31, 2022 |
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

10 (citing Tsai Decl. ¶ 7).  They published the first completed, retail version of Ark: Survival Evolved on August 29, 2017 for Microsoft Windows, Sony's PlayStation 4, and Microsoft's Xbox One.  Opp. at 10 (citing Tsai Decl. ¶ 8).  To date, Ark: Survival Evolved has generated over $700 million in revenue.  Opp. at 10 (citing Stieglitz Decl. ¶ 8).  Defendants have registered copyrights in Ark: Survival Evolved.  See Dkt. 29-22 (Declaration of defendants' counsel Robert M. Schwartz ("Schwartz Decl.")), Exs. B-G.

Angela Games started developing Myth of Empires in 2018, and spent at least $9 million during its development.  TRO at 10 (citing Dkt. 15-2 (Declaration of Cheng Ting Kong ("Cheng Decl.")) ¶ 4).  Myth of Empires was released for sale to the general public on November 18, 2021.  TRO at 10 (citing Cheng Decl. ¶ 14).  Pursuant to a distribution agreement between Imperium and Valve dated July 5, 2020, Myth of Empires was initially "offered, distributed, and made available to end users by Valve via a service known as the Steam Platform."  TRO at 10 (citing Cheng Decl. ¶ 13).

Plaintiffs claim that "[t]he source code for Myth of Empires is more than 800,000 lines long and is largely written in C++, which is a high-level object-oriented programming language tailored to system programming, with performance, efficiency, and flexibility of use as its design highlights."  TRO at 10 (citing Cheng Decl. ¶ 4).  They add that Myth of Empires "was developed in part using version 4.26 of Unreal Engine (UE 4.26) under license from Epic Games, Inc."  TRO at 10 (citing Cheng Decl. ¶ 4).

Defendants claim that plaintiffs stole the source code for Myth of Empires, and that "[o]f the 82 Angela [Games] employees listed in the credits of [their] infringing game, 60 are ex-employees of Snail (China)."  Opp. at 11 (citing Tsai Decl. ¶ 13). Defendants emphasize that an ex-Snail Games employee, Yang Li Ping, was given access to the Ark: Survival Evolved code base "for the purpose of creating a 'backup' of the code for protection against possibl[e] server failure."  Opp. at 11 (citing Tsai Decl. ¶ 18). Jeremy Stieglitz, the co-founder of Wildcard, submitted a declaration stating that Myth of Empires' gameplay code includes "hundreds of variables, classes, and functions that appear to match up to [Ark: Survival Evolved's] own data structures nearly one-to-one," and that "[t]hese structures had matching names and data types, with minimal-to-no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | January 31, 2022 |
|---|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

changes." Stieglitz Decl. ¶¶ 11-12.[3] Defendants argue that these similarities strongly suggest that Yang Li Ping, the ex-Snail Games employee with access to the Ark: Survival Evolved code base, copied Ark: Survival Evolved's source code and used it to develop Myth of Empires. Opp. at 11.

In response, plaintiffs submitted the declaration of the ex-Snail Games employee, Yang Li Ping, who is currently an employee of the corporate parent of Angela Games, Suzhou Seven Senses Game Co. Ltd. See Dkt. 33-1 (Declaration of Yang Li Ping ("Yang Decl.")). Therein, Yang states that he "never had possession of any physical copy of Ark: Survival Evolved game source code in any form," and that he "never transferred or communicated any copy of Ark: Survival Evolved game source code to any person." Id. ¶¶ 9-10. Yang's declaration is undermined by a December 1, 2018 email chain between Yang and Snail Games USA's CEO, Jim Tsai, wherein Tsai asks Yang to download the Ark: Survival Evolved source code and "keep it confidential," and Yang responds by stating that he has "completed downloading" the code for the latest version of Ark: Survival Evolved.[4] Dkt. 29-12.

---

[3] For example, defendants note that "the names 'bOnlyUseExpireTimeMultipliersIfActivated' and 'SpawnInventoryOnDestructionLifeSpan' are used in the code of both games to perform the same functions." Opp. at 12 (citing Stieglitz Decl. ¶¶ 12-13, Ex. A). Defendants contend that "[i]t is implausible that programmers working independently of each other would have come up with these same, identical names," which are "arbitrary" and "not necessary for the program [to function]." Opp. at 12.

[4] At oral argument, plaintiffs' counsel argued that the evidence Yang had access to and downloaded the Ark: Survival Evolved source code is disputed. Plaintiffs' counsel referred to Yang's third declaration, wherein Yang states that the December 1, 2018 email chain between Yang and Tsai "refers to a transfer of source code to a [Snail Games] China server, not to any storage device under my control." Dkt. 49-1 (Third Declaration of Yang Li Ping ("3d. Yang Decl.") ¶ 7. Yang's statement is opposed by Tsai's declaration, wherein Tsai states that "Yang had acquired a copy of the Ark source code on his work laptop in 2016" and that "[b]y no later than 2018, Mr. Yang had access to the specific version of the Ark source code that we believe is present in [Myth of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

In their opposition to plaintiffs' request for a TRO, defendants submitted the declaration of Bastian Suter, CEO of BattlEye Innovations e.K. ("Battleye"), the company that created the anti-cheat software for Ark: Survival Evolved. See Dkt. 29-13 (Declaration of Bastian Suter ("Suter Decl.")). Suter's preliminary analysis "noted that the strings shared between Ark: Survival Evolved and Myth of Empires were 'extremely unique, use the same format, capitalization and even typos ([e.g.] "receive" instead of "receive")' which, for him 'left no doubt . . . that the BattlEye integration code from [Ark: Survival Evolved] must have been copied and taken as a base for Myth of Empires.'" Opp. at 13 (quoting Suter Decl. ¶ 7). Additionally, defendants engaged a third-party expert, Christopher Rucinski, who found on a limited record that "'[t]he extent of similarities already identified [by Wildcard] . . . raises serious concerns that computer source code for [Myth of Empires] was copied from [Wildcard's] computer source code.'" Opp. at 13 (quoting Dkt. 29-16 (Declaration of Christopher Rucinski ("Rucinski Decl.")) ¶¶ 7-10).

With their supplemental brief, plaintiffs offer the second declarations of Yang Li Ping and David I. August. See Dkt. 38-1 (Second Declaration of Yang Li Ping ("2d. Yang Decl.")); Dkt. 38-2 (Second Declaration of David I. August ("2d. August Decl.")). In his second declaration, August, an expert in computer science and a Professor at Princeton, states that the Stieglitz declaration "provides misleading reflection analysis," and that, similarly, the Rucinski declaration "relies upon misleading analysis," at least in part due to a lack of "filtration."[5] 2d. August Decl. ¶¶ 8-32. August concludes that "he

---

Empires]." Dkt. 41-13 (Second Declaration of Jim Shun Tsai) ¶¶ 13-14. In sum, although Yang "den[ies] having ever transferred any Ark: Survival Evolved source code to any unauthorized memory storage device, at any time" (3d. Yang Decl. ¶ 8), there is evidence that Yang had access to and downloaded the source code.

[5] Filtration refers to a method "for separating protectable expression from non-protectable material." Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 707 (2d Cir. 1992). "This process entails examining the structural components at each level of abstraction to determine whether their particular inclusion at that level was [an] 'idea' or was dictated by considerations of efficiency, so as to be necessarily incidental to that idea; required by factors external to the program itself; or taken from the public domain and hence is nonprotectable expression." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

see[s] little support for the belief that substantial similarity will ultimately be found in a proper copyright infringement abstraction-filtration-analysis test of the source codes." Id. ¶ 26. In his second declaration, Yang states that, from late December 2021 to early January 2022, under his supervision, a team attempted to recreated Stieglitz's analysis of the gameplay codes, and found that "the images appearing on pages 4-18 of [Stieglitz's analysis] comprise sequences of C++ function and variables names that do not, in fact, exist in either of the code bases purportedly described in those pages, but have been manually selected, artificially re-ordered, and presented side-by-side in an apparent attempt to create a false impression of similarity." 2d. Yang Decl. ¶¶ 4-6. Yang adds that "[t]he use of descriptive names for classes, functions, or variables does not imply that the code for implementing a called function or variable is the same or similar." Id. ¶ 25.

In turn, with their supplemental brief, defendants offer the second declaration of Bastian Suter, the third-party developer of an anti-cheating program that works with Ark: Survival Evolved. See Dkt. 41-1 (Second Declaration of Bastian Suter ("2d. Suter Decl.")). In his second declaration, Suter states that "nothing Mr. Yang says in either of his two declarations disputes the facts that I observed, namely, that the BattlEye integration code strings that were written specifically and uniquely for [Ark: Survival Evolved] show up in [Myth of Empires], and that their presence in [Myth of Empires] could only be the result of someone who worked on [Myth of Empires] copying the section of the [Ark: Survival Evolved] source code in which the BattlEye integration code was placed." Id. ¶ 16. Additionally, Stieglitz states that, in running the source code comparison, he did in fact filter out game code attributable to the Unreal Engine. See Stieglitz Decl. ¶ 14. Finally, defendants submit the supplemental declarations of Stieglitz and Rucinski, in which they rebut the validity of plaintiffs' code analyses and reiterate that "enough copied code has been identified to form a very clear pattern, and more will likely be demonstrated via a source code analysis." Dkt. 41-4 (Second Declaration of Jeremy Stieglitz ("2d. Stieglitz Decl.")) ¶ 110; see also Dkt. 41-2 (Second Declaration of Christopher Rucinski ("2d. Rucinski Decl.")).

On December 1, 2021, following their internal source code analyses, defendants sent the Valve Letter, which alleged that Myth of Empires was built using stolen source code from Ark: Survival Evolved, and demanded that Valve "take down all versions of [] Myth of Empires from Valve's Steam Platform." Valve Letter at 3. The Valve Letter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | January 31, 2022 |
|---|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

further stated that "key employees of the developer of Myth of Empires worked at the Chinese parent of Snail Games USA Inc. and at least one of them had credentials that enabled them to access the Ark: Survival Evolved source code." Id. Plaintiffs contend that the Valve Letter did not include any evidence that the Ark: Survival Evolved source code "[had] been copied, uploaded, or downloaded," and claim that the Valve Letter "merely cite[d] to scattered fragments of 527 lines out of the more than 800,000 lines that make up the Myth of Empires source code." TRO at 11 (citing Cheng. Decl. ¶¶ 21-23). In response, defendants note that, when they sent the Valve Letter, they "attached an 11-page side-by-side comparison of [the] Ark: Survival Evolved code to [plaintiffs'] code." Opp. at 13; see also Valve Letter.

"On or about December 4, 2021, Valve removed Myth of Empires from its online videogaming platform." TRO at 11. Plaintiffs claim that, as a result of the Valve Letter, "Plaintiffs' sales of their flagship product, Myth of Empires, almost immediately went to zero, all cross-selling opportunities evaporated, and an unknown number of potential customers were relegated to other options." TRO at 12 (citing Cheng Decl. ¶ 27). Plaintiffs claim that Myth of Empires is Angela Games' only source of Revenue. 2d. Yang Decl ¶ 33. As a result of the Myth of Empires takedown, plaintiffs contend that their share of the estimated monthly gross revenues from sales on the Valve platform dropped from $1.6 million to zero, their Series-A financing was terminated by their investor, and they have received a substantial amount of negative publicity. Id. ¶¶ 26-33. However, in their supplemental brief, defendants point out that Angela Games "has evaded Defendants' DMCA takedown notices by selling its infringing game on its own website," which defendants contend "eliminates the need to withdraw Defendants' DMCA notices and any 'harm' from them." Defs. Supp. at 8 (citing https://store.mythofempires.com).[6]

---

[6] In their sur-reply, plaintiffs describe the direct sales of Myth of Empires on their website as "a small-scale test of a new version of Myth of Empires that was publicly announced on January 17, 2022." Plfs. Sur-Reply at 2. Moreover, at oral argument, plaintiffs' counsel emphasized that the loss of access to Valve's user base, which Valve allegedly claims has more than a billion registered users, has had a devastating effect on their business. See 3d. Yang Decl. ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|----------|------------------------|------|------------------|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

The parties have not yet agreed on the protocol for an independent source code comparison. Opp. at 15. Defendants made the first such request on December 10, 2021, the day after plaintiffs filed this case. Schwartz Decl., Ex. H. While defendants would like to compare the entire source code, plaintiffs have suggested that the comparison be limited to 5 modules that defendants would identify in advance. Id., Ex. I. Plaintiffs claim that "Defendants have refused Plaintiffs' invitation to identify up to five (5) modules of allegedly copyrighted Ark: Survival Evolved source code and any supposedly corresponding modules of Myth of Empires source code." TRO at 15 (citing Dkt. 15-1 (Declaration of plaintiffs' counsel James W. Dabney ("Dabney Decl."), Exs. 1-4). In turn, defendants claim that "the only way to ensure that Angela [Games] has not acted unlawfully is to compare complete working codebases, in the precise state they had released their respective games, with no opportunity to hide the evidence." Opp. at 15 (citing Stieglitz Decl. ¶¶ 21-23; Rucinski Decl. ¶ 13).

In their supplemental brief, plaintiffs reiterate that "Defendants have rejected offers to perform trustworthy, rapid comparisons of either (a) code modules selected by Defendants or (b) the Myth of Empires source code and Defendants' allegedly copyrighted codes in their entirety," and that "Defendants propose only comparisons that would require months to complete." Plfs. Supp. at 20 (citing Dkt. 38-4 (Second Declaration of plaintiffs' counsel James W. Dabney ("2d. Dabney Decl.")) ¶ 2). Defendants respond that "it is Angela [Games] who has obstructed a meaningful code comparison" because while defendants have requested a comparison of the complete source code, plaintiffs "would agree only to either: (1) a 'partial' source code comparison, or (2) a source code comparison using a theoretical academic tool not in use in the industry, which tool would also miss similarities obscured by Angela with minor spelling changes (likely by design)." Defs. Supp. at 19-20 (citing 2d. Rucinski Decl. ¶¶ 17-29).

## III.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). Therefore, a district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." Id. at 22. Such a showing requires that the plaintiff establish that he "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | January 31, 2022 |
|---|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20; see Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009); see also Johnson v. Couturier, 572 F.3d 1067, 1081 (9th Cir. 2009); Am. Trucking Ass'ns Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011) (interpreting Winter). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

A plaintiff seeking a preliminary injunction must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" in the absence of preliminary relief. Winter, 555 U.S. at 22; Am. Trucking, 559 F.3d at 1052. It is not enough that the claimed harm be irreparable—it also must be imminent. Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). Conclusory affidavits are insufficient to demonstrate irreparable harm. Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985).

IV.   DISCUSSION

Plaintiffs' requested relief "is treated as a mandatory injunction, because it 'orders a responsible party to take action.'" Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (quoting Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009)). Mandatory injunctions "go[] well beyond maintaining the status quo" and are "particularly disfavored." Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir. 1994). When a party "seeks a mandatory injunction, she must establish that the law and facts clearly favor her position, not simply that she is likely to succeed." Garcia, 786 F.3d at 740. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." Marlyn Nutraceuticals, Inc., 571 F.3d at 879 (internal citations and quotation marks omitted).

As previously noted, as the party seeking the preliminary injunction, plaintiffs must make a sufficient showing as to all four prongs of the Winter test in order to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | January 31, 2022 |
|----------|------------------------|---|------|-------------------|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

establish that they are entitled to the requested relief.  See All. for the Wild Rockies, 632 F.3d at 1135.[7]  The Court now addresses the Winter factors.

    A.    **Likelihood of Success on the Merits**

        Plaintiffs bring claims for declaratory judgment of non-liability for copyright infringement and declaratory judgment of non-liability for trade secret misappropriation. "To prevail on a copyright infringement claim, a plaintiff must show that (1) he or she owns the copyright in the infringed work, and (2) the defendant copied protected elements of the copyrighted work."  Williams v. Gaye, 895 F.3d 1106, 1119 (9th Cir. 2018).  To prevail on a trade secret misappropriation claim, a plaintiff must show "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff."  Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).  "In a declaratory judgment action, the burden of proving infringement remains with the rightsholder."  Beyond Blond, 479 F. Supp. 3d at 880-881; see also Marya v. Warner/Chappell Music, Inc., 131 F. Supp. 3d 975, 984 (C.D. Cal. 2015) ("[T]here is no reason to relieve the alleged owners of the intellectual property of the usual burden of proof just because they are nominally the defendants in this declaratory judgment action.").

---

[7] At oral argument and in their sur-reply, citing Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191 (2014), and Beyond Blond Productions, LLC v. Heldsman, 479 F. Supp. 3d 874 (C.D. Cal. 2020), plaintiffs suggested that defendants bear the burden of showing the that plaintiffs infringed on their copyrights.  However, Medtronic, which held that "when a licensee seeks a declaratory judgment against a patentee to establish that there is no infringement, the burden of proving infringement remains with the patentee," never discussed the evidentiary burden for preliminary relief, and does not shift the burden of proof to defendants on a mandatory preliminary injunction.  Medtronic, Inc., 571 U.S. at 194.  Rather, as the Beyond Blond court recognized, the party seeking the mandatory injunction "'must establish that the law and facts clearly favor her position, not simply that she is likely to succeed.'"  Beyond Blond, 479 F. Supp. 3d at 880, 884 (quoting Garcia, 786 F.3d at 740) (finding that "the facts and the law clearly favor[ed] Plaintiff's position that it [was] entitled to a declaration that its videos [did] not infringe" defendants' copyright registration).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|----------|----------------------|------|------------------|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

Here, defendants have submitted certificates of copyright registrations listing Snail Games USA as the claimant for copyright in Ark: Survival Evolved.  See Dkts. 29-24, 29-25, 29-26).  "A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'"  United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c)).[8]  Moreover, "[s]ource code is undoubtedly a trade secret."  Integral Dev. Corp. v. Tolat, 675F. App'x 700, 703 (9th Cir. 2017).

"A plaintiff may establish copying through direct or circumstantial evidence."  Klauber Bros., Inc. v. H & M Hennes & Mauritz LP, No. CV 18-3507-MWF (SSX), 2018 WL 6985316, at *3 (C.D. Cal. Dec. 11, 2018) (citing Baxter v. MCA, Inc., 812 F.2d 421, 423 (9th Cir. 1987)).  Misappropriation may be shown through the "[e]mploy[ment of] the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information."  02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005).  Accordingly, the key question with respect to

---

[8] At oral argument, plaintiffs' counsel contended that the record is devoid of any evidence that the Ark: Survival Evolved code that defendants used to conduct their comparative analysis is the copyrighted version of the code.  As defendants' counsel pointed out at the hearing, the lack of such evidence is readily explained by the Copyright Office's computer program submission policies, which explicitly sanction the deposit of portions of source code, in lieu of the entire code.  See Copyright Office, "Circular 61: Copyright Registration of Computer Programs" (Rev. Mar. 2021) ("If the source code does not contain trade secrets, submit one copy of the first twenty-five page and last twenty-five pages of the source code for the specific version you want to register. . . . If the source code does contain trade secrets, you must indicate in writing to the Office that the code contains trade secret material" and choose among several submission options, which include "[o]ne copy of the first ten pages and last ten pages, blocking out none of the code.").  Moreover, defendants' counsel added at oral argument that defendants could submit a declaration establishing that Ark: Survival Evolved code that they compared to plaintiffs' Myth of Empires code is the copyrighted version, and that defendants did not submit such a declaration because plaintiffs' counsel did not raise this argument until the January 31, 2022 hearing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

likelihood of success on the merits, with respect to plaintiffs' copyright infringement and trade secret misappropriation declaratory judgment claims, is whether plaintiffs' game, Myth of Empires, includes source code copied from Ark: Survival Evolved.

Plaintiffs argue that they are likely to succeed on the merits of their declaratory judgment claims, stating that defendants "are acting to oust this Court of jurisdiction and deny Plaintiffs any meaningful opportunity to defend their legal interests." TRO at 15. Plaintiffs claim that "Defendants have refused Plaintiffs' invitation to identify up to five (5) modules of allegedly copyrighted Ark: Survival Evolved source code and any supposedly corresponding modules of Myth of Empires source code." TRO at 15 (citing Dabney Decl., Exs. 1-4). As such, plaintiffs argue the existing record provides no basis for holding that defendants are likely to succeed on the merits of plaintiffs' copyright infringement, trade secret, and §512(f) claims against defendants.[9]

In opposition, defendants argue that their evidence, such as the examples of near-identical class, variable, and function names in the Ark: Survival Evolved and Myth of Empire codes, demonstrates that plaintiffs unlawfully copied the Ark: Survival Evolved source code. See Stieglitz Decl. ¶ 9-10. Other circumstantial evidence of copying offered by defendants includes strings of integration code, not available to the public, which include common errors such as misspellings. See Suter Decl. ¶¶ 5-8. Finally, defendants point to computer science expert Christopher Ruscinski, who after comparing the two codes, concluded that the similarities "raise serious concerns" about copying. Ruscinksi Decl. 7-10. Defendants also argue that they have shown trade secret misappropriation based on the preliminary code analysis and because Angela Games knew, or should have known, it was using the source code in violation of a contract with Snail Games, given that a majority of Angela Games' employees who worked on Myth of Empires previously worked for Snail Games. Tsai Decl. ¶ 11, 13. Defendants contend these actions damaged defendants by causing potential destruction of their trade secrets and "the general raiding of Snail Games' workforce." Opp. at 17.

In reply, with respect to the likelihood of success on the merits, plaintiffs claim that "Defendants have not disputed that Plaintiffs are likely to succeed on the merits of

---

[9] Contrary to plaintiffs' argument, it is plaintiffs' burden, not defendants', to show a likelihood of success on the merits. Winter, 555 U.S. at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

their claim that the Court has jurisdiction to award declaratory relief in this action." Reply at 4.[10]  In their supplemental brief, plaintiffs add that "defendants have not identified any original copyrighted source code as having been copied," and that "any similarities between the games derive from third party content."  Plfs. Supp. at 15-17 (citing Google LLC v. Oracle America, Inc., 141 S. Ct. 1183, 1186 (2021)).

In their supplemental brief, defendants claim that plaintiffs have failed to demonstrate any likelihood on success of the merits because they have failed to rebut the validity of defendants' copyrights and failed to rebut defendants' evidence of copying. Defs. Supp. at 14-19.  In particular, they contend that "[t]he inexplicable presence in [Myth of Empires] of BattlEye code that was written uniquely for [Ark: Survival Evolved]—and which would not even work properly in [Myth of Empires]—is strong evidence of copying and misappropriation."  Id. at 15 (citing Suter Decl. ¶¶ 6-8; 2d. Suter Decl. ¶¶ 7-9).

The Court finds that defendants have offered a plethora of circumstantial evidence related to their counterclaims of copyright infringement and trade secret misappropriation sufficient to defeat plaintiffs' motion for a preliminary injunction, including: (1) evidence that of the 82 Angela Games employees who worked on Myth of Empires, 60 are ex-employees of Snail Games who quit to join Angela Games in 2019 (Tsai Decl. ¶ 13); (2) evidence that at least one of those employees, Yang Li Ping, was given access to the Ark: Survival Evolved code base (id. ¶ 18); (3) a December 12, 2021, preliminary code analysis which shows that the gameplay codes for Myth of Empires and Ark: Survival Evolved include hundreds of near-identical function names such as "bOnlyUseExpire TimeMultipliersIfActivated" and "SpawnInventoryOnDestructionLifeSpan" (Stieglitz Decl. ¶¶ 12-13, Ex. A); and (4) the declarations of a third-party expert, who found on a limited record that "[t]he extent of similarities already identified . . . raises serious

---

[10] Despite plaintiffs' argument, the merits of plaintiffs' claims encompass more than the question of whether "the Court has jurisdiction to award declaratory relief in this action," and defendants have vigorously argued that plaintiff has not demonstrated any likelihood of success on the merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | January 31, 2022 |
| --- | --- | --- | --- | --- |
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

concerns that computer source code for [Myth of Empires] was copied from [defendants'] computer source code" (Rucinski Decl. ¶ 10).[11]

While plaintiffs submit the declaration Yang Li Ping, wherein Yang states that he "never transferred or communicated any copy of Ark: Survival Evolved game source code to any person" (Yang Decl. ¶ 10), Yang's declaration is belied by the December 1, 2018 email chain proffered by defendants wherein Yang states that he has "completed downloading" the Ark: Survival Evolved source code pursuant to a request to do so by Snail USA's CEO, Jim Tsai. See Dkt. 29-12.

Otherwise, although plaintiffs dispute defendants' code analysis methodologies, and attempt to minimize the code similarities identified by defendants as "scattered fragments" (Plfs. Supp. at 16), defendants in turn provide a point-by-point rebuttal to plaintiffs' code analysis. See 2d. Stieglitz Decl. ¶¶ 23-110; 2d. Rucinski Decl. ¶¶ 30-54. Moreover, plaintiff offers no authority suggesting that it would be exonerated if it only copied "scattered fragments" of source code. In sum, plaintiffs' limited evidence, particularly when evaluated in conjunction with the evidence provided by defendants, fails to meet plaintiffs' burden of establishing either a probability of success on the merits or a serious question as to whether the law and facts "clearly favor" plaintiffs' position. Garcia, 786 F.3d at 740. Accordingly, the Court will not upset the status quo by requiring defendants to take the "affirmative action" of withdrawing their takedown notices to Valve, Tencent, and other platforms hosting Myth of Empires. Id.

---

[11] At oral argument, plaintiffs' counsel claimed that there is no credible proof of similarity between the Myth of Empires code and the Ark: Survival Evolved code. However, in addition to the substantial evidence cited already cited by the Court, in his declaration submitted with defendants' response to plaintiffs' sur-reply, third-party Bastian Suter, the CEO of BattlEye, noted the existence of identical word misspellings in the Ark: Survival Evolved code and Myth of Empires code, which according to Suter suggests that "the second coder (working for Angela, on Myth Of Empires, and perhaps not a native English-speaker) had access to the earlier-written Ark code and copied it without noticing the misspellings." Dkt. 54-1 (Second Supplemental Declaration of Bastian Suter) ¶¶ 6-8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

### B.    Irreparable Harm

Plaintiffs argue that Myth of Empires is their "sole product," and that "the loss of sales due to Defendants' actions places Plaintiffs in severe, potentially fatal financial straits." TRO at 15. Moreover, plaintiffs claim irreparable harm to its reputation, due to negative publicity and social media posts. Id. at 12.

In opposition, defendants argue that Angela Games has not identified any immediate, irreparable harm. Opp. at 21. Defendants note the primary injury Angela Games identifies is lost sales, but that economic injury alone does not support a finding of irreparable harm. See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991). Moreover, defendants contend that Angela Games offers only conclusory testimony regarding reputational injuries, which is insufficient, without evidentiary support, to show irreparable harm. Opp. at 21.

In their supplemental brief, plaintiffs add that they face irreparable harm unless a preliminary injunction is granted because they invested over $9 million dollars in Myth of Empires, and because defendants' takedown notices have decimated plaintiffs' business and reputation, forced plaintiffs to refund money to customers, and destroyed its ability to raise investment capital. Plfs. Supp. at 12 (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 838 (9th Cir. 2001)).

The Court acknowledges that both reputational harm and being forced out of business absent an injunction can be sufficient to establish irreparable injury. See Los Angeles Memorial Coliseum Commission, 634 F.2d 1197, 1203 (9th Cir. 1980). However, when "Plaintiff has not submitted any evidence to support its claims besides its own employee's conclusory testimony," a plaintiff cannot show irreparable harm. Medcursor Inc. v. Shenzen KLM Internet Trading Co., 2021 WL 2024858, at *6 (C.D. Cal. Apr. 20, 2021). See also Stardock, 2018 WL 7348858 at *11 (finding that the "only evidence offered in support of" plaintiff's claims of "damage to its business" were "the conclusory statements of its own executive," which were "insufficient" to establish irreparable injury). Similarly, here, plaintiffs have not made a sufficient showing that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al |

money damages would be inadequate to compensate them in the event that plaintiffs eventually prevail.[12] Am. Trucking Ass'n, Inc., 559 F.3d at 1057.

In fact, the evidence plaintiffs offer in their supplemental brief, which includes a table showing their damages, suggests money damages would be sufficient to compensate them. See Dkt. 38-1. Plaintiffs are able to specify that their share of the estimated gross revenue from Valve went from $1.6 million to zero following the Valve Letter, and that they lost $15 million in Series-A financing. Id. Moreover, plaintiffs are currently selling Myth of Empires directly to consumers on their website. This suggests that plaintiffs have not been forced out of business and are not without revenue.

With respect to their reputational damages, "[d]amage to a business's goodwill is typically irreparable injury because it is difficult to calculate." Optinrealbig.com, LLC v. Ironport Sys., Inc., 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004). Plaintiffs point primarily to the negative reader comments to a PC Gamer article titled "Steam removes popular Chinese strategy game after Ark: Survival Evolved studio claims it stole their source code." See Dkt. 38-1 at 231-234. These comments and the article simply reflect the takedown of Myth of Empires and the existence of a dispute between the parties, and the Court finds that plaintiff's reputational injury, to the extent it is distinct from plaintiff's financial injury, is not the sort of "extreme or very serious damage" that

---

[12] At oral argument, plaintiffs' counsel claimed that they may lack a remedy if plaintiffs' position that they did not infringe on defendants' copyrights is vindicated at trial. The Court disagrees. Plaintiffs' complaint brings a claim "for damages and attorneys' fees under 17 U.S.C. § 512(f)." Compl. ¶ 30. Pursuant to 17 U.S.C. § 512(f), "any person who makes knowing, material misrepresentations in filing a DMCA takedown notice shall be liable for any damages, including costs and attorneys' fees[ ] incurred by the alleged infringer.'" Automattic Inc., 82 F. Supp. 3d at 1017 (N.D. Cal. 2015) (quoting 17 U.S.C. § 512(f)). Here, plaintiffs allege that defendants "fabricated evidence" (Plfs. Sur-Reply at 2) and "knowingly [and] materially misrepresented to Valve that its distribution of Myth of Empires infringed [defendants'] copyrights" (Compl. ¶ 28). While the Court finds that plaintiffs have not clearly established the law and facts favor their position on a preliminary injunction, plaintiffs have a remedy pursuant to 17 U.S.C. § 512(f) if they establish that defendants made knowing and material misrepresentations in connection with the Valve Letter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

warrants a mandatory preliminary injunction, especially given plaintiffs' inability to show a likelihood of success on the merits. Marlyn Nutraceuticals, Inc., 571 F.3d at 879.

 **C.**  **Balance of Hardships**

 With respect to the balance of equities, plaintiffs argue that defendants will not suffer any harm if they have to wait until trial to recover for their "purported claims for copyright infringement and trade secret misappropriation that they made to Plaintiffs' service providers including Valve." Id. at 16.

 Defendants argue the balance of equities tips in their favor and counsels against the Court issuing a preliminary injunction, citing to Stardock Sys., Inc. v. Reiche., 2018 WL 7348858, at *10 (N.D. Cal. Dec. 27, 2018). In Stardock, the court denied plaintiff's request for injunctive relief for withdrawal of defendant's DMCA takedown notices, holding that "forclos[ing] Defendants from exercising their statutory right to issue a DMCA notice of infringement" would be "inequitable and would turn the status quo doctrine on its head." Id. at *10-11. Accordingly, defendants contend that the balance of equities overwhelmingly favors them, as granting a preliminary injunction would strip defendants of their rights to limit harm from this infringement. Opp. at 19.

 In their supplemental brief, plaintiffs argue that "the balance of hardships sharply tips in favor of Plaintiffs" because "if a preliminary injunction is not granted, they not only face the destruction of their current business, but as stated above, they also face the complete destruction of their reputation and standing in the online game industry." Plfs. Supp. at 18.

 The Court finds that the balance of the hardships does not strongly favor either party. Both parties' injuries are likely compensable by money damages that may be demonstrated at trial. While the takedown from the Valve platform of plaintiffs' primary revenue-generating product represents a substantial injury to plaintiffs' business, defendants would suffer harm if stripped of their right to issue a DMCA notice of infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

### D.     Public Interest

Finally, pointing to <u>Beyond Blond</u>, 479 F. Supp. 3d 874, plaintiffs argue that granting the preliminary injunction is in the public interest.  TRO at 16-17.  In <u>Beyond Blond</u>, third-party entities ceased the distribution of the plaintiffs' products following defendants' takedown notices.  <u>Beyond Blond</u>, 479 F. Supp. 3d at 879-880.  The court granted plaintiffs' requested preliminary injunction, which required withdrawal of defendants' takedown notices, in part because "the balance struck by Congress encourage[s] rightsholders to bring any disputed copyright claims to court and not rely solely on DMCA notifications to pursue alleged infringers." <u>Id.</u> at 889.

In opposition, defendants argue that the public interest weighs against issuing a preliminary injunction.  Opp. at 20.  Defendants note that the DMCA reflects Congress' considered judgment that takedowns in response to good faith assertions of infringement are in the public interest.  <u>See</u> <u>Stardock</u>, 2018 WL 7348858, at *8–9 (internal quotations and citations omitted).

While the Court agrees with plaintiffs that where non-infringing material has been removed, granting the relief requested is in the public interest, here, unlike in <u>Beyond Blond</u>, plaintiff has not shown that it is likely to succeed on the merits.  <u>See</u> 479 F. Supp. 3d at 888 (finding that "the facts and the law clearly favor Plaintiff's position that it is entitled to a declaration that its videos do not infringe Defendants' trademark.").  Accordingly, the public interest does not favor the issuance of a mandatory preliminary injunction.

## V.     CONCLUSION

In accordance with the foregoing, the Court finds that a preliminary injunction is not appropriate, and **DISCHARGES** the order to show cause as to why a preliminary injunction should not be issued.  The Court **ORDERS** the parties to meet and confer regarding a source code comparison, and to select a mutually agreeable independent expert, on or before **February 18, 2022**.  If the parties do not agree upon an independent expert, on or before **February 28, 2022**, the parties must each submit the name and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | January 31, 2022 |
|----------|------------------------|------|-------------------|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

contact information of two proposed experts, and the Court will thereafter consider appointing an expert pursuant to Federal Rule of Evidence 706.

IT IS SO ORDERED.

|  | 01 | : | 04 |
|--|----|----|----|
| Initials of Preparer | | CMJ | |