ROBERT S. MAGEE (Bar No. 271443)
robert@bluepeak.law
JEFFREY C. RISHER (Bar No. 204089)
jeff@bluepeak.law
KATE FALKENSTIEN (Bar No. 313753)
kate@bluepeak.law
BLUE PEAK LAW GROUP LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306
Telephone: (281) 972-3036

GARLAND T. STEPHENS (*pro hac vice*)
JUSTIN L. CONSTANT (*pro hac vice*)
ANNA E. DWYER (*pro hac vice*)
RICHARD M. KOEHL (*pro hac vice*)
BLUE PEAK LAW GROUP LLP
3139 W Holcombe Blvd, PMB 8160
Houston, TX 77025
Tel. 281-972-3036

JOANNA ARDALAN (Bar No. 285384)
jardalan@onellp.com
ONE LLP
23 Corporate Plaza, Ste 150-105
Newport Beach, CA 92660
Telephone: (310) 437-8665
Facsimile: (310) 258-5081

*Attorneys for Plaintiffs and Counter-defendants*
SUZHOU ANGELA ONLINE GAME TECHNOLOGY CO., LTD. and
IMPERIUM INTERACTIVE ENTERTAINMENT LIMITED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZHOU ANGELA ONLINE GAME TECHNOLOGY CO., LTD., and IM-PERIUM INTERACTIVE ENTER-TAINMENT LIMITED,<br><br>Plaintiffs and Counter-defendants,<br><br>v.<br><br>SNAIL GAMES USA INC., and WILDCARD PROPERTIES LLC,<br><br>Defendants and Counterclaimants, | Case No. 2:21-cv-9552 CAS-SK<br>Related Case: 2:22-cv-02009 CAS-SK<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE ZEIDMAN EXPERT REPORT**<br><br>Motion hearing date: January 9, 2023<br>Motion hearing time: 10:00 a.m.<br>Judge: Hon. Christina A. Snyder<br><br>Case Filed: December 9, 2021<br>Trial Date: January 9, 2024 |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on January 9, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Christina A. Snyder, Plaintiffs Suzhou Angela Online Game Technology Co., Ltd. and Interactive Entertainment, Ltd. (collectively "Plaintiffs") will move pursuant to FRE 702, 703, 706, and 403 to strike the report of the Court-appointed neutral expert, Mr. Zeidman, submitted in this case. This motion is supported by the accompanying memorandum of points and authorities, as well as the Declarations of Garland Stephens, Matt Tonks, and Crista Lopes and associated exhibits, and the Proposed Order submitted concurrently with this application.  The motion may additionally be supported by the filings on the Court's docket, other such evidence or argument as the Court may receive in connection with this motion, and the presentations made at any hearing on this motion which the Court may hold.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 1 and November 8, 2022 via Zoom videoconference.

Respectfully submitted,


DATED:    December 5, 2022     By: /s/ Joanna Ardalan

ROBERT S. MAGEE (Bar No. 271443)
KATE FALKENSTIEN (Bar No. 313753)
GARLAND T. STEPHENS (*pro hac vice*)
JUSTIN L. CONSTANT (*pro hac vice*)
ANNA E. DWYER (*pro hac vice*)
RICHARD M. KOEHL (*pro hac vice*)
JEFFREY C. RISHER (*pro hac vice*)

BLUE PEAK LAW GROUP LLP

JOANNA ARDALAN (Bar No. 285384)

ONE LLP

*Attorneys for Plaintiffs and*
*Counter-Defendants*

1

1

## **TABLE OF CONTENTS**

2

3

4  INTRODUCTION ........................................................................................................ 1

5  BACKGROUND ......................................................................................................... 4

   ARGUMENT ............................................................................................................... 5

6  I.      MR. ZEIDMAN'S OPINIONS ARE OVERWHELMINGLY BASED ON

7          THIRD-PARTY CODE FOUND IN BOTH PARTIES' GAMES. ........................... 6

   II.     MR. ZEIDMAN DID NOT FOLLOW THE COURT'S PROCEDURE FOR

8          SOURCE CODE COMPARISON. .................................................................... 14

9  III.    MR. ZEIDMAN'S REPORT FAILS TO TIE HIS ANALYSIS TO THE

          ASSERTED WORKS. ..................................................................................... 16

10 IV.     SWC DID NOT FOLLOW THE COURT'S PROCEDURE FOR SOURCE

          CODE COMPARISON. .................................................................................... 19

11 V.      MR. ZEIDMAN'S METHODS ARE UNFIT FOR HIS TASK. ................. 21

12     A.   Mr. Zeidman's Unreliable Methods Do Not Do What He Claims ............... 21

13     B.   Mr. Zeidman Did Not Compare SWC's Code With The Allegedly
          Infringing Work. ......................................................................................... 22

14     C.   Mr. Zeidman's Report Is Not Helpful To A Factfinder Because He Offers
          No Opinions On The Similarity Of The Parties' Games Or Code. ...................... 23

15     D.   Mr. Zeidman's Role Violates The Party Presentation Principle. ................. 24

16 VI.     Mr. Zeidman Should Not Be Permitted To "Fix" His Report. ...................... 25

   VII.    Mr. Zeidman Should Not Be Permitted To Testify To The Jury. ................. 25

17 CONCLUSION ......................................................................................................... 25

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*CareDx, Inc. v. Natera, Inc.*,
 2021 WL 1840646 (D. Del. May 7, 2021) ...........................................................5

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017)....................................................22

*Comp. Assoc. Int'l v. Altai, Inc.*,
 982 F.2d 693 (2d Cir. 1992) ................................................................................15

*Cooper v. Brown*,
 510 F.3d 870 (9th Cir. 2007) .................................................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993)................................................................................................5

*Greenwalt v. Sun City West Fire Dist.*,
 23 F. App'x 650 (9th Cir. 2001). .......................................................................4, 5

*Johannsongs-Publishing Ltd. v. Lovland*,
 2020 WL 2315805 (C.D. Cal. Apr. 3, 2020).......................................................24

*Juno Therapeutics, Inc. v. Kite Pharma*,
 2019 WL 8685065 (C.D. Cal. Dec. 3, 2019).........................................................6

*Mesfun v. Hagos*,
 2005 WL 5956612 (C.D. Cal. Feb. 16, 2005).......................................................5

*Monolith Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
 558 F.3d 1341, 1348 (Fed. Cir. 2009) ................................................................25

*Rentmeester v. Nike, Inc.*,
 883 F.3d 1111 (9th Cir. 2018). ...........................................................................15

*Skidmore v. Zeppelin*,
 952 F.3d 1051 (9th Cir. 2020) ............................................................................24

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
 24 F.3d 1088 (9th Cir. 1994) ..............................................................................22

ii

MEM. OF POINTS AND AUTHS. ISO PL.'S MOT. TO
STRIKE ZEIDMAN REP.

CASE NO. 2:21-CV-09552-CAS

*United States v. Heinrich*,
  971 F.3d 160 (3d Cir. 2020) ................................................................. 6

*United States v. Sineng-Smith*,
  145 S. Ct. 1575 (2020) ...................................................................... 24

*Vitaulic Co. v. ASC Engineered Solutions, LLC*,
  2022 WL 17250376 (D. Del. Nov. 28, 2022) ........................................ 5

**Statutes**

17 U.S.C. § 102(a) ............................................................................... 23

17 U.S.C. § 102(b) ............................................................................... 15

18 U.S.C. § 1837 .................................................................................. 22

**Other Authorities**

Federal Rule of Evidence 403 ........................................................ 2, 3, 5

Federal Rule of Evidence 702 ............................................................... 5

Federal Rule of Evidence 706 ......................................................... 4, 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEM. OF POINTS AND AUTHS. ISO PL.'S MOT. TO
STRIKE ZEIDMAN REP.

CASE NO. 2:21-CV-09552-CAS

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE ZEIDMAN REPORT

3    Plaintiffs move to strike Mr. Zeidman's report under Federal Rules of Evidence

4   403 and 702 and related caselaw because, among other reasons discussed below, the

5   vast majority of evidence of copying which Mr. Zeidman relies upon is actually third-

6   party code that Plaintiffs specifically identified to Mr. Zeidman before he began his

7   work, including Unreal Engine code authored by Epic Games.

8    From the outset of this case, Plaintiffs have explained that the overwhelming

9   majority of similarities between Plaintiffs' *Myth of Empires* game and Defendants'

10  ("SWC's") code arise from them "having both been constructed using pre-existing

11  objects and algorithmic logic resident in Unreal Engine 4 (UE4), a software product

12  licensed by third-party Epic Games." Dkt. 34 at 3.

13    The parties engaged extensively on how Mr. Zeidman should perform his

14  analysis to avoid false positives based on Unreal Engine and related Epic Games

15  software. *See, e.g.*, Dkt. 83 at 4, 14, 19, 22; Dkt. 88. Ultimately, the Court directed

16  Plaintiffs to provide Mr. Zeidman with all of the code needed to compile *Myth of*

17  *Empires* (including Unreal Engine code), and directed Defendants to provide "an

18  identification of the specific code branches and revisions that correspond to the

19  copyrights and trade secrets asserted in this litigation, as well as an identification of

20  third party code found within the same code files" in the form of SWC's responses to

21  interrogatories. Dkt. 90-1 at 1. The Court addressed the third-party code issue by

22  directing Mr. Zeidman to "filter[] out any third-party code, as identified in Defendants'

23  responses to Plaintiffs' First Set of Interrogatories." *Id.* Plaintiffs specifically identified

24  Unreal Engine and related Epic Games code called ShooterGame to Mr. Zeidman before

25  he started his work. Stephens Decl., Exs. D, E.

26    In deposition, Mr. Zeidman admitted ████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████



Stephens Decl., Ex. C ("Zeidman Dep. Tr.") at 39:22-40:2.

Unreal Engine is freely available for download on the Internet, but requires an Epic Games Password. Zeidman Dep. Tr. at 58:2-4.

Mr. Zeidman's report contains many other egregious errors discussed below.  His report and conclusions are therefore not supported by the evidence on which he relies, and the methods he employed are not reliable.  His report should therefore be excluded under Federal Rule of Evidence 403.

Plaintiffs bring this motion now because they are being prejudiced by Mr. Zeidman's report now, in this case and in business.  SWC's pending motion to require Plaintiffs to post a bond in this case is based on Mr. Zeidman's report.  Dkt. 176 at 2. SWC has also tried to get one of Plaintiffs' few remaining service providers for users

2

of previously sold copies of *Myth of Empires* (Tencent) to stop supporting it.  Stephens Decl. ¶¶ 20-21; Exs. R, S.  Unless the Court takes decisive action to eliminate Mr. Zeidman's report from the record, Plaintiffs will continue to be prejudiced by SWC's ongoing touting of his incorrect and baseless conclusions to the Court and the world.

Because Mr. Zeidman's report is full of incorrect and misleading conclusions as a result of his faulty methods, any probative value it could have is vastly outweighed by the unfair prejudice it is causing Plaintiffs, as well as the confusion, delay, and waste it has already caused and will continue to cause.  It is also cumulative because the parties' experts will inevitably address the same material if Mr. Zeidman's report remains in the case.  It should therefore be excluded from the case now under Federal Rule of Evidence 403.

Despite its fatal flaws, Mr. Zeidman's report is telling in key respects.  By failing to exclude third-party code, Mr. Zeidman wrongly identified large amounts of licensed third-party code as copied from SWC.  Yet there is no indication that Mr. Zeidman's methods missed any files containing code that *was* copied, and despite having three weeks to bring any such files to Mr. Zeidman's attention before he finalized his report, SWC did not do so.  Dkt. 148. It is therefore reasonable to conclude that the *only* code that should be at issue in this case is in the files specifically identified in Mr. Zeidman's report from the identified Plaintiff's interrogatory responses provided to Mr. Zeidman under the Court-ordered procedures.

Despite its exaggerated and incorrect conclusions, Mr. Zeidman's report identifies only ████████████████████████████████████████ ██████████████  This is an extremely tiny fraction of the approximately ████ ██████████████████████████████████████████████████████████████ ████████  Lopes Decl. ¶ 7.  SWC proposed that Mr. Zeidman engage in this exercise over Plaintiffs' objection, *see* Dkt. 88 at 2, and told the Court that if SWC identified the wrong files to the expert, SWC should lose, and the Court agreed.  Stephens Decl., Ex. J, at 28:11-18.  SWC should now live with the consequences of its proposal.

3

### BACKGROUND

On March 9, the Court appointed Mr. Zeidman as a neutral expert pursuant to Federal Rule of Evidence 706. Dkt. 80. The appointment specified that "Mr. Zeidman's duties will be determined in future proceedings." *Id.* at 4. Plaintiffs did not object to the appointment, but in the parties' joint report submitted April 22, 2022, Plaintiffs did object to Mr. Zeidman undertaking his own review of the parties' code without prior expert reports from the parties, because that would "usurp the role of the parties' chosen experts" rather than serving "as a technical advisor to aid the Court in understanding the adversary submissions filed by the parties." Dkt. 88 at 2, 3, Ex. 1; Dkt. 62 at 24:21-26:6. On April 25, 2022, Magistrate Kim nevertheless ordered Mr. Zeidman to conduct his own comparison, essentially following procedures proposed by SWC. Dkt. 90, 90-1. On May 3, 2022, Mr. Zeidman received a laptop provided by Plaintiffs for accessing the source code for Plaintiffs' game *Myth of Empires*. Stephens Decl., Ex. M.

On May 9, 2022, Plaintiffs objected and sought review of Magistrate Kim's order, arguing (among other things) that the Court should require opinions from the parties' experts first. Dkt. 96. On June 6, 2022, the Court overruled Plaintiffs objections. Dkt. 109. After further disputes and substitution of new counsel for Plaintiffs, on July 25, 2022, Plaintiffs agreed to Mr. Zeidman's proposal for performing the review ordered by the Court, noting that the agreement was subject to Plaintiffs previous objections. Dkt. 88 at 2-4. On August 3, 2022, Mr. Zeidman began his analysis. Stephens Decl., Ex. O. Mr. Zeidman provided his report to the parties on September 8, 2022. Stephens Decl., Ex. A. At Mr. Zeidman's suggestion, the parties agreed to a three-week period in which either party could submit additional evidence to Mr. Zeidman. The Court agreed, setting a deadline of September 29, 2022. Dkt. 153. Neither party submitted any new evidence.

Over SWC's objection, which was overruled by Magistrate Kim, Plaintiffs took Mr. Zeidman's deposition on October 18, 2022. Dkt. 163; *see* Stephens Decl, Ex. C.

# **ARGUMENT**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702 allows expert testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 requires that expert testimony must be both relevant and admissible. *See Daubert*, 509 U.S. at 589. "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Expert testimony "may not include unsubstantiated speculation and subjective beliefs." *Greenwalt v. Sun City West Fire Dist.*, 23 F. App'x 650, 652 (9th Cir. 2001). "[T]estimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder." *Mesfun v. Hagos*, 2005 WL 5956612, at *11 (C.D. Cal. Feb. 16, 2005) (internal citations omitted).

"While Rule 702 incorporates, to some extent, the danger of unfair prejudice, courts may still exclude expert testimony under Federal Rule of Evidence 403." *Vitaulic Co. v. ASC Engineered Solutions, LLC*, 2022 WL 17250376, at *3 (D. Del. Nov. 28, 2022); *CareDx, Inc. v. Natera, Inc.,* 2021 WL 1840646, at *2 (D. Del. May 7, 2021) (quoting *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 746 (3d Cir. 1994)). Rule 403 states that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Ev. 403.   Rule 403 grants a district court "broad

5

MEM. OF POINTS AND AUTHS. ISO PL.'S MOT. TO
STRIKE ZEIDMAN REP.

CASE NO. 2:21-CV-09552-CAS

discretion," and district courts should "explicitly engage in some 403 balancing on the record." *United States v. Heinrich,* 971 F.3d 160, 163 (3d Cir. 2020); *see also Juno Therapeutics, Inc. v. Kite Pharma*, 2019 WL 8685065, at *8 (C.D. Cal. Dec. 3, 2019) (granting motion to exclude expert testimony "[g]iven the low probative value . . . and the high 403 concerns given the circumstances[.]").

## I. MR. ZEIDMAN'S OPINIONS ARE OVERWHELMINGLY BASED ON THIRD-PARTY CODE FOUND IN BOTH PARTIES' GAMES.

The only section of Mr. Zeidman's report that actually identifies code that he says is copied from SWC is Section E, entitled "Examples of Copying." This section begins with a discussion of Exhibits F, G, and H to his report, which together list a total of ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████ Zeidman Rpt. ¶¶ 79-81. These claims are clearly and egregiously wrong.

As plaintiffs' expert Dr. Lopes explains and shows in the attached declaration, *more than 95% of these statements, comments and identifiers come directly from third-party Epic Games' code, including Unreal Engine code,* which is freely available for download on the Internet, directly contradicting the claims in his report. Lopes Decl. ¶ 5, n.1-3.

Before Mr. Zeidman began working on his report, plaintiffs informed him that the Unreal Engine code is an important source of similarity between the parties' code that might not be excluded by his methods. Stephens Decl., Ex. C; Zeidman Dep. Tr. at 13:18-15:4. In fact, Mr. Zeidman's report acknowledges that ████████████████ ████████████████████████████████████████████████████████████ ██████████████████████ Although Mr. Zeidman downloaded and used this Unreal Engine code during the preparation of his report, ████████████

1  ████████  the overwhelming extent of his errors show that his methods did not properly

2  account for this (and other) third-party code.  This problem is pervasive, and is not

3  limited to Exhibits F, G, and H.

4    In addition to being overwhelmingly erroneous, Exhibits F, G, and H present only

5  ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  The

7  report thus erroneously suggests ██████████ in a manner that cannot be easily

8  checked or verified.  In fact, the five works provided to Mr. Zeidman by SWC range in

9  size  from ████████████████████████████████████

████████████████████████████████████████████████████████

████████  But Mr. Zeidman's report ██████████████████████████

████████████████████████████,  As explained

13  below, much of this code *also* comes directly from code published by Epic Games

14  which Plaintiffs identified to Mr. Zeidman before he began his work.

15    Mr. Zeidman focuses first and most extensively on ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████

24  ████████████████  Like Mr. Zeidman's claims regarding the code in Exhibits F, G,

25  and H, this is not true.

26  ████████████████████████████████████████████████████████

27  ████████████████  the source code for a game called ShooterGame published by

28  Epic Games as an example for programmers to follow when writing games for Unreal

7

1  Engine.  Lopes Decl. ¶ 12.  Both SWC and Plaintiffs based their Games on it.  *Id*.  In

2  fact, ███████████████████████████████████████████████████████

███████████████████████████████████████████████ The ShooterGame source code

4  can be freely downloaded from Epic Games website.[1]  Plaintiffs specifically pointed

5  Mr. Zeidman to Epic's ShooterGame code before he began his work.  Zeidman Dep.

6  Tr. at 16:2-17:23; Stephens Decl., Ex. E. ███████████████████████

7      Epic's  `ShooterImpactEffect.cpp`  file  includes ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ which is defined in Unreal

13  Engine to include a field (a portion of data in the data structure) called `ImpactPoint`.

14  Lopes Decl. ¶ 19.

15  ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Unreal Engine field.

18  Lopes Decl. ¶ 20.

19      Based on his erroneous conclusion that ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ Mr. Zeidman incorrectly concludes

23  that ████████████████████████████████████████████████████

████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  [1] See https://docs.unrealengine.com/4.27/en-US/Resources/SampleGames/ShooterGame/

[REDACTED] This reasoning is both based on incorrect facts and highly misleading.

First, Mr. Zeidman's reasoning assumes that Plaintiffs changed the name of the [REDACTED] ut he offers no evidence that is the case.  As Dr. Lopes explains, Plaintiffs simply deleted it.  Lopes Decl. ¶ 22.  Mr. Zeidman also fails to acknowledge that [REDACTED] Far from supporting Mr. Zeidman's conclusion that [REDACTED]

Critically, Mr. Zeidman *cites no other source code* for his conclusion that [REDACTED] This opinion therefore lacks any probative value because it is erroneous and unsupported by the evidence.  It is also extraordinarily prejudicial, because it insinuates that [REDACTED] without any attempt to prove that is so.  This opinion is also not within the scope of the task Mr. Zeidman was assigned by the Court.

Similarly, [REDACTED] a file in Epic's ShooterGame source code.  Mr. Zeidman claims that t [REDACTED] Again, Mr. Zeidman is wrong.

9

As explained in Dr. Lopes Declaration, ██████████████████████████

████████████████████████████████████████████████████████████████

████████████ For example, the chart below ████████████████████████

████████████████████████████████████████████

| ███████████████████████ | Line | Epic ShooterReplicationGraph.cpp |
|---|---|---|
| | 359 | void UShooterReplicationGraph::InitGlobalGraphNodes() |
| | 360 | { |
| | 361 | // Preallocate some replication lists. |
| | 362 | PreAllocateRepList(3, 12); |
| | 363 | PreAllocateRepList(6, 12); |
| | 364 | PreAllocateRepList(128, 64); |
| | 365 | PreAllocateRepList(512, 16); |

Mr. Zeidman compares ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Mr.

Zeidman claims that ████████████████████████████████████████████

████████████████████████████████████████████████████ Once again,

Mr. Zeidman is wrong.

As    explained    in    the    declaration    of    Dr.    Lopes,    ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ For example, the chart below

compares some of the ████████████████████████████████████████████

████████████████████████████████████████████

| ███████████████████████ | Line | Epic ObjectWriter.cpp |
|---|---|---|

MEM. OF POINTS AND AUTHS. ISO PL.'S MOT. TO
STRIKE ZEIDMAN REP.

CASE NO. 2:21-CV-09552-CAS

| | | |
|---|---|---|
| ▓ | 28 | FArchive& FObjectWriter::operator<<( class FLazyObjectPtr& LazyObjectPtr ) |
| ▓ | 29 | { |
| ▓ | 30 | FUniqueObjectGuid ID = LazyObjectPtr.GetUniqueID(); |
| ▓ | 31 | return *this << ID; |
| ▓ | 32 | } |
| ▓ | 33 | |
| ▓ | 34 | FArchive& FObjectWriter::operator<<( class FAssetPtr& AssetPtr ) |
| ▓ | 35 | { |
| ▓ | 36 | FStringAssetReference ID = AssetPtr.GetUniqueID(); |
| ▓ | 37 | ID.Serialize(*this); |
| ▓ | 38 | return *this; |
| ▓ | 39 | ) |

▓▓▓▓▓▓▓▓▓▓▓ for which Mr. Zeidman acknowledges that many of the similarities he describes with *Myth of Empires* code are found in third-party code, in a file named `VictorBPFunctionLibrary.cpp` available on the Internet from a third-party Unreal Engine programmer who uses the name "Rama." Zeidman Rpt. ¶ 99. Mr. Zeidman nevertheless concludes that ▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*Id.* ¶ 100. Mr. Zeidman also states that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Once again, Mr. Zeidman is wrong.



| | Line | Epic SceneCaptureRendering |
|---|---|---|
| | 170 | FMatrix ViewMatrix = Transform.ToInverseMatrixWithScale(); |
| | 171 | FVector ViewLocation = Transform.GetTranslation(); |
| | | / swap axis st. x=z,y=x,z=y (unreal coord space) so that z is up |
| | 172 | ViewMatrix = ViewMatrix * FMatrix( |
| | 173 | FPlane(0,    0,    1,    0), |
| | 174 | FPlane(1,    0,    0,    0), |
| | 175 | FPlane(0,    1,    0,    0), |
| | 176 | FPlane(0,    0,    0,    1)); |
| | 177 | const float FOV = CaptureComponent->FOVAngle * (float)PI / 360.0f; |

In   addition,   the   Rama   `VictorBPFunctionLibrary.cpp`   code   is demonstrably *not* ▨▨▨▨▨. Rama is a well-known Unreal Engine developer who distributes code for use with Unreal Engine, including the VictoryBPLibrary ▨▨▨▨▨. A post on the Reddit "r/unrealengine" forum describes him as "legend":

← r/ r/unrealengine

Posted by u/TooMuchBroccoli 7 years ago

13  **Rama**

I don't know about you my friends, but that guy is a legend. Countless times, his little tutorials helped me resolve issues, get answer for questions, learn more efficient ways to get things done.

Thank you Rama!

💬 19 Comments   → Share   🔖 Save   ⊘ Hide   ⚑ Report        70% Upvoted

1    A simple Google search for "Rama Unreal Engine" brings up multiple links to

2  pages containing links to Rama's Victory Blueprint Library, including links on the

3  Unreal Engine forums website.  Stephens Decl. ¶ 19.  A number of these links point to

4  Internet sites different than ███████████████████████████████████████████

5  Similarly, a YouTube search for "Rama Unreal Engine" brings up a link to Rama's

6  homepage on YouTube (https://www.youtube.com/@ramaue4plugins287), which links

7  to videos demonstrating the Victory Blueprint Library.  Mr. Zeidman's speculation that

8  ██████████████████████████████████████████████████ is baseless,

9  outside his expertise, and outside the scope of the task he was set by the Court.

10    Mr. Zeidman goes on to focus on ████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ Yet as explained by Dr. Lopes, this code too is

13  very similar in form and function to code found in an earlier version of Unreal Engine,

14  that is freely available online.  Lopes Decl. ¶ 32.

15    Mr.  Zeidman  identifies  ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████ However, rather than identify these ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Again, Mr. Zeidman is wrong.

22    As. Dr. Lopes explains, ████████████████████████████

███████████████████████████████████████████████████████

███████████████ This Unreal Engine file has ████████████████

25  `Source/Runtime/Engine/Private/InstancedStaticMesh.cpp,` ████

██████████████████████████████████

27    These and numerous other errors in Mr. Zeidman's report discussed below have

28  at least three root causes: 1) Mr. Zeidman did not follow the procedure that the Court

13

directed him to follow; 2) SWC did not follow the procedure that the Court directed it to follow; and 3) Mr. Zeidman's methods are unfit for the task assigned by the Court: performing a literal and non-literal comparison of code that includes large amounts of third-party code.

## II.     MR. ZEIDMAN DID NOT FOLLOW THE COURT'S PROCEDURE FOR SOURCE CODE COMPARISON.

In the Order setting the "procedure" for Mr. Zeidman's work, the Court directed Defendants to provide him with "an identification of the specific code branches and revisions that correspond to the copyrights and trade secrets asserted in this litigation, as well as an identification of third party code found within the same code files" including Defendants' responses to Plaintiffs' First Set of Interrogatories and a copy of certain "diff" files referenced therein.  Dkt. 90-1 at 1.  The Court further directed Mr. Zeidman to filter out "any third-party code, as identified in Defendants' responses to Plaintiffs' First Set of Interrogatories, including all exhibits thereto and the diff files produced by the Defendants."  *Id.*

In deposition, Mr. Zeidman admitted that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

This was not an accident.  To the contrary, Mr. Zeidman's report indicates that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊



1

As a result of this

Mr. Zeidman's report

4 in the SWC Interrogatory responses provided to Mr. Zeidman and therefore should not

5 have been included in his analysis at all.  These include at least the

7      Mr. Zeidman also failed to "conduct a literal and non-literal comparison of each

8 version of Ark and Atlas" and provide opinions on whether the results of the comparison

9 indicate 1) literal copying and 2) non-literal copying of the structure, sequence and

10 organization or menu structures of defendants source code.  Instead, Mr. Zeidman

11

14      The Copyright Act "does not forbid all copying." *Rentmeester v. Nike, Inc.*, 883

15 F.3d 1111, 1117 (9th Cir. 2018).  It states that "[i]n no case does copyright protection

16 for an original work of authorship extend to any idea, procedure, process, system,

17 method of operation, concept, principle, or discovery, regardless of the form in which

18 it is described, explained, illustrated, or embodied in such work. 17 U.S.C. § 102(b).

19 Courts have addressed this limitation using an "abstraction-filtration-comparison test,"

20 "first break[ing] down the allegedly infringed program into its constituent structural

21 parts" and then "examining each of these parts for such things as incorporated ideas,

22 expression that is necessarily incidental to those ideas, and elements that are taken from

23 the public domain."  *Comp. Assoc. Int'l v. Altai, Inc.*, 982 F.2d 693, 706 (2d Cir. 1992).

24 The goal is to "*sift out all non-protectable material*" and then compare what remains

25 "with the structure of an allegedly infringing program. *Id.* (emphasis added).

26 *Comp. Assoc. Int'l v. Altai, Inc.*, 982 F.2d 693, 706 (2d Cir. 1992) (emphasis added).

27      Mr. Zeidman claims that

but this is clearly not the case.  Mr. Zeidman admitted in

15

1   deposition that ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████. But the

4   ████████████████████████████████ shows this is nonsense. His results

5   clearly include many unprotectable elements, including large amounts of third-party

6   code (as discussed above), even third-party code that █████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████. He offers no opinions as

10   to whether the copying that he claims occurred was literal or non-literal, nor any

11   explanation about whether or how the unprotectable elements in his exhibits and report

12   should be interpreted in assessing literal or non-literal copying.

### III.   MR. ZEIDMAN'S REPORT FAILS TO TIE HIS ANALYSIS TO THE ASSERTED WORKS.

15   Mr. Zeidman compounds the errors discussed above by failing to identify ████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████

20   Mr. Zeidman's report acknowledges ██████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

25   Yet he never identifies ██████████████████████ listed in his report or

26   exhibits. This is problematic because, as discussed below, there are ████████

27   ████████████. And importantly, SWC asserts different claims for different works

28

MEM. OF POINTS AND AUTHS. ISO PL.'S MOT. TO
STRIKE ZEIDMAN REP.

CASE NO. 2:21-CV-09552-CAS

1 ▨▨▨▨▨▨▨▨ For example, SWC does not assert copyright claims for

2 *Atlas*. Stephens Decl., Ex. L at 4-7 (response to Interrogatory No. 4). As noted, ▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨ and thus should not have been included in Mr. Zeidman's analysis.

5 There is no straightforward way to determine which files contain the code

6 identified in Mr. Zeidman's report and exhibits without searching or comparing the code

7 in those exhibits with SWC's code itself, which has only been produced on a locked-

8 down laptop at SWC's counsel's offices. Lopes Decl. ¶ 8; Zeidman Dep. Tr. at 94:25-

9 95:17 ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ As noted above,

10 Exhibits F, G, and H present only ▨▨▨▨▨▨▨▨▨▨▨ Mr.

11 Zeidman's report provides no indication at all of which SWC files each fragment came

12 from. Mr. Zeidman testified that ▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨ ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ Further, the fragments

16 are presented in alphabetical order, not the order in which they appear in either parties'

17 source code. They are not grouped by the file or work they came from, making it

18 extremely difficult to evaluate them and Mr. Zeidman's claims that ▨▨▨▨▨▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

20 Only exhibits I and J to Mr. Zeidman's report compare *Myth of Empires* and SWC

21 code. Yet these exhibits fail to identify ▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨ Lopes Decl. ¶ 8. Zeidman Rpt. n. 27, 40. For almost every file,[2] Mr. Zeidman's

23 report identifies ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

26 _____

27 [2] For two of the listed files ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

28 ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

17

1    The source of the file matters. For example, for
2    ████████████████████████████ Mr. Zeidman's report itself shows that there are
3    important differences between the two cited sources. ████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████ Mr. Zeidman reproduces the results from
8    searching both versions for ████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

13    Other than showing the raw search results, Mr. Zeidman does not mention this
14    difference between the two versions, and in his Exhibit I, he lists only the code from
15    ██ that agrees with his theory. However, ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████ It should not have been included in Mr. Zeidman's comparison at all.
19    There are other material differences that Mr. Zeidman's report glosses over in a
20    manner that is difficult to detect. For example, Mr. Zeidman's report identifies ████
████████████████████████████████████████████████████████. He
22    does not mention any differences between these versions, and lists four statements that
23    he says ████████████████████████████████████ *Id.* ¶¶
24    105-06. In deposition, he could not say whether t████████████████████
████████████████████████████████████████████████████████
26    However, he did confirm, ████████████████████████████
████████████████████████████████████████████████████████
28

1   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨ There is no straightforward way to detect

2   this omission without searching the SWC source code.

3        As a result of Mr. Zeidman's failure to identify the source of the code that he lists

4   in his report, it is impossible to assess his opinions with respect to the different works

5   and claims in dispute, or even to determine whether the code he cites is actually at issue

6   in the case, without access to the SWC source code itself.

7   **IV.   SWC DID NOT FOLLOW THE COURT'S PROCEDURE FOR**

8   **SOURCE CODE COMPARISON.**

9        SWC's own failure to follow the Court's procedure contributed directly to Mr.

10  Zeidman's many failures.  Instead of specifically identifying its alleged copyrights and

11  trade secrets by work and file, SWC ▨▨▨▨▨▨▨▨▨▨▨▨▨▨

12  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

13  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ To

14  avoid having to manually search each repository for these file and path names, Mr.

15  Zeidman simply ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

16  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

17       For    example,    SWC    listed    the    following    pathname    for

18  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

19  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

20  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ There is no indication

21  of what work this file is found in.  To determine which work contained this file, Mr.

22  Zeidman would have had to check each repository.  Rather than do that, he simply ▨▨▨

23  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

24  ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ because it saved him some effort.

25  Zeidman Rpt. ¶ 56; Zeidman Dep. Tr. at 20:17-22:15, 178:14-180:4.

26       SWC also failed to properly identify the third-party code contained within these

27  files.  The fact that ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

28

1  ████████████████████████████████████████████████████████

████████████████████████████████████ PDFs of "diff" files" that have been made

3  available on the source code computer at SWC's counsel's office.  Stephens Decl., Ex.

4  L at 9:3-11, 68:1.  As discussed above, this file is ████████████████████████

████████████████████████████████████ Yet Plaintiffs' expert Dr. Lopes

6  inspected the diff files on the source code computer and there was no diff file indicating

7  lines of ███████████████████████ that are third-party code.  Lopes Decl. ¶ 16.

8      Similarly, SWC identified ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Yet as discussed above, nearly all of

11 the code identified from this file by Mr. Zeidman comes directly from an Epic source

12 code file from ShooterGame ███████████████████.  Lopes Decl. ¶ 24.  SWC does not

13 identify Epic's ShooterGame ████████████████████████ SWC also listed

14 ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ came

16 from Unreal Engine.  *Id.* ¶¶ 27, 28.  SWC's failure to identify code from ShooterGame

17 is not inadvertent.  In connection with Plaintiffs' objections to the order appointing Mr.

18 Zeidman, Plaintiffs submitted a declaration to the Court noting that SWC had not

19 produced diff files over ShooterGame.  Dkt. 96-01 ¶¶ 19-20.

20      Further, SWC appears not to have properly identified "the specific code branches

21 and revisions that correspond to the copyrights … asserted in this litigation" as directed

22 by the Court.  The dates of first publication for the three registered works asserted in

23 this action is August 29, 2017 for the PS4 and Xbox One versions of *Ark* and November

24 30, 2018 for the Nintendo Switch version.  Dkt. 27_1-3 (copyright registrations).  Yet

25 the dates of the revisions identified in SWC's interrogatory responses are ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Dr.

28 Lopes examined these revisions and found that ████████████████████

1   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   The code identified by SWC therefore ▮▮▮▮▮▮▮▮▮ in the published,

3   registered Xbox and PS4 versions. The fact that the publication date for the Nintendo

4   Switch version is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *d.*

6   **V.   MR. ZEIDMAN'S METHODS ARE UNFIT FOR HIS TASK.**

7       **A. Mr. Zeidman's Unreliable Methods Do Not** ▮▮▮▮▮▮▮▮

8

9       The egregious scale of the errors in Mr. Zeidman's report demonstrates

10  conclusively that his methods cannot reliably distinguish third-party code, directly

11  contradicting his claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Perhaps his methods

14  work in some cases. But when the large majority of code in both parties' games

15  originates from a third party, they simply do not work as claimed.

16      There are other problems with his methods that also falsely suggest confidence

17  in his demonstrably wrong conclusions. For example, in deposition, Mr. Zeidman

18  claimed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This is not true,

20  and when ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21      For example, Mr. Zeidman ▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the Unreal Engine code

23  because the Unreal Engine ▮▮▮▮▮▮▮▮ Zeidman Dep. Tr. at 68:13-

24  70:6. But pressed further, he admitted that ▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮ Mr. Zeidman ▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

3     As explained by plaintiffs' expert, Exhibits F and G contain

Lopes Decl. ¶ 6.

7     **B. <u>Mr. Zeidman Did Not Compare SWC's Code With The Allegedly</u>**

8           **<u>Infringing Work.</u>**

9     The copyright laws of the United States do not reach otherwise infringing acts

10 performed outside the United States. *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.,* 24

11 F.3d 1088, 1098 (9th Cir. 1994). Similarly, neither California nor United States trade

12 secret laws reach purely foreign activities. 18 U.S.C. § 1837; *Cave Consulting Grp.,*

13 *Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at *6 (N.D. Cal. Apr. 24, 2017).

14     Plaintiffs' source code was entirely written outside the United States and has

15 never been present in the United States except when produced in this lawsuit. The only

16 thing that has ever been published, copied, or sold in the United States that is at issue

17 in this case is the *Myth of Empires* game, which did not include the source code that

18 was used to compile the game. As explained by Dr. Lopes, it is technically impossible

19 to recover the *Myth of Empires* source code from the package that was available in

20 Steam without additional information. Lopes Decl. ¶ 34.

21     The source for *Myth of Empires* is used to generate (compile) an executable file

22 which users run to play the game. The executable file does not contain source code; it

23 is the result of a compilation process that takes source code as input and produces the

24 bare bones machine instructions as "object code" for the computer to run. *Id.* ¶¶ 34-36.

25 This compilation process transforms most of the human-readable aspects of the source

26 code beyond recognition. *Id.* ¶¶ 34-35.

27     As a general matter, no "machine or device" can recover the human-written

28

22

1  source code of modern programs from their object code, because the compiler's
2  transformations are expression-destroying, logic-transforming, and irreversible, with
3  certain exceptions such as the Unreal Engine's reflection system. *Id.* ¶¶ 36, 37.
4  However, the Unreal Engine reflection only works with source code specially written
5  for it. *Id.* Much of the code discussed in Mr. Zeidman's report cannot be "perceived,
6  reproduced, or otherwise communicated, either directly or with the aid of a machine or
7  device" from the game distributed in the United States. *Id.* ¶39. It is thus not the subject
8  of United States copyright law. 17 U.S.C. § 102(a). Indeed, much of what Mr. Zeidman
9  █████████████████████████████████████████████████████████
   ████████████████████████████████████████████████ has no effect
11 whatever on the compiled game. *See* Lopes Decl. ¶ 35 ("Comments … are eliminated");
12 Zeidman Dep. Tr. at 123:3-22, 176:2-25 ████████████████████████
   ████████████████████████████████████████████████████████
   █████████████████████████████████████
15 █████ Because Mr. Zeidman offers ████████████████████████████████
   ████████████████████████████████████████████████████████
   ████████████████████████████████████████ from the *Myth of Empires* game
18 distributed in the United States, his analysis is not probative of copyright infringement
19 in the United States. Similarly, because he offers no evidence or opinions about what,
20 if any, of the code is actually embodied in the distributed object code, it is not probative
21 of trade secret misappropriation under United States of California law.

22  **C. Mr. Zeidman's Report Is Not Helpful To A Factfinder Because He Offers**
23     **No Opinions On The Similarity Of The Parties' Games Or Code.**

24  Even if a source code comparison were the correct test (it is not), and Mr.
25 Zeidman's report were not rife with factual errors (it is), Mr. Zeidman's opinions are
26 unhelpful in evaluating copyright infringement, because he does not address the degree
27 of similarity between the protectable elements of the parties' respective source code.
28

1   *See Johannsongs-Publishing Ltd. v. Lovland*, 2020 WL 2315805 at *5-6 (C.D. Cal. Apr.

2   3, 2020) (excluding expert opinions as "fatally flawed," "legally deficient," and

3   "irrelevant" where expert failed to compare works in a manner required under extrinsic

4   test), *aff'd*, 2021 WL 5564626 (9th Cir. 2021) ("We hold that the district court did not

5   abuse its discretion in excluding Finell's expert reports because they failed to filter out

6   similarities that are attributable to prior art, as required under the extrinsic test.").

7   Mr. Zeidman's report describes assigning a "correlation score" to pairs of compared

8   files.  Zeidman Rpt. ¶ 32.  However, during his deposition, he admitted that his report

9   does not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    ▮▮▮▮▮▮▮▮▮▮▮.  Tr. at 166:20-168:6.  Further, Mr. Zeidman admitted that ▮▮▮▮▮▮▮

    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at

12  171:18-172:3.  As stated in Mr. Zeidman's own book, "The Software IP Detective's

13  Handbook," his correlation measure "is designed to produce large scores even when

14  only a small portion of code is correlated or only specific elements of code are correlated

15  such as identifies or even comments."  Stephens Decl., Ex. Q (Mr. Zeidman's book);

16  Zeidman Dep. Tr. at 170:12-24.  Thus, Mr. Zeidman's report is not only unhelpful for

17  assessing copyright infringement; his methods are also not suited to address the

18  threshold question of substantial similarity between the registered and accused works.

19  *See Skidmore v. Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

20          **D. Mr. Zeidman's Role Violates The Party Presentation Principle.**

21          Under the principle of party presentation, litigation in the United States "is

22  designed around the premise that [parties represented by competent counsel] know what

23  is best for them, and are responsible for advancing the facts and argument entitling them

24  to relief." *United States v. Sineng-Smith*, 145 S. Ct. 1575, 1579 (2020) (quotation

25  omitted).  Here, rather than requiring SWC to advance its own facts and argument, the

26  task was outsourced to Mr. Zeidman. SWC has not been required to identify allegedly

27  infringing source code in *Myth of Empires*, despite having had access for months.

28          As a non-lawyer expert, it is not surprising that Mr. Zeidman could not

                                            24

independently assess all facts relevant to his analysis and reach a reliable, useful conclusion. *The extraordinary degree* to which he failed is nevertheless egregious.

## VI.   Mr. Zeidman Should Not Be Permitted To "Fix" His Report.

Plaintiffs submit that Mr. Zeidman's report is far too flawed to be fixed, and that the flaws demonstrate that his methods are too unreliable to be trusted.  Further, after being confronted with many of these mistakes, Mr. Zeidman testified that "nothing I've seen today has changed my opinion."  Zeidman Dep. Tr. at 198:18-199:6.  He is thus committed to the conclusions that he has already drawn, even though they are demonstrably based on incorrect facts.

## VII.   Mr. Zeidman Should Not Be Permitted To Testify To The Jury.

Plaintiffs submit that the sheer scope of Mr. Zeidman's errors should compel the Court to strike his report and disallow any testimony from Mr. Zeidman in this case. However, whatever other role the Court may have in mind for him, he should not be permitted to testify as a court-appointed expert to the jury.  The Federal Circuit has noted that, "[t]he predicaments inherent in court appointment of an independent expert and revelations to the jury about the expert's neutral status trouble this court to some extent." *Monolith Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009).  Indeed, the Federal Circuit has commented that experts appointed by the Court under Rule 706 should be used "only in rare and compelling circumstances." *Id.* This is especially so when the expert has demonstrated that his methods are unreliable and lead to demonstrably false conclusions and that he is unwilling to change his mind even when confronted with his mistakes.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion and strike Mr. Zeidman's report from the record.

1   Respectfully submitted,

2

3   DATED:     December 5, 2022          By: /s/ Joanna Ardalan

4                                            Joanna Ardalan

5                                        JOANNA ARDALAN (Bar No. 285384)

6                                        ONE LLP

7                                        Attorneys for Plaintiffs and Counter-

8                                        defendants,

9                                        SUZHOU ANGELA ONLINE GAME

10                                       TECHNOLOGY CO., LTD. and

11                                       IMPERIUM INTERACTIVE

                                         ENTERTAINMENT LIMITED

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEM. OF POINTS AND AUTHS. ISO PL.'S MOT. TO                              CASE NO. 2:21-CV-09552-CAS
STRIKE ZEIDMAN REP.