UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | March 9, 2023 |
|---|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) [REDACTED]** PLAINTIFFS' MOTION TO STRIKE ZEIDMAN'S EXPERT REPORT (Dkt. 197, filed on DECEMBER 5, 2022)

## I.     INTRODUCTION

Presently before the Court is plaintiffs' motion to strike the report and testimony of Robert Zeidman, appointed as an expert by the Court pursuant to Federal Rule of Evidence 706.

On December 9, 2021, plaintiffs Suzhou Angela Online Game Technology Co., Ltd. ("Angela") and Imperium Interactive Entertainment Limited ("Imperium") filed the instant action against defendants Snail Games USA Inc. ("Snail USA") and Wildcard Properties LLC ("Wildcard") (collectively, "SWC"). See Dkt. 1 ("Compl."). Angela is the developer and owner of a videogame entitled "Myth of Empires." Id. ¶ 6. Until December 2021, Myth of Empires was "offered, distributed, and made available to end users" by the Valve Corporation ("Valve"), a third-party platform that is not a party to this litigation. Id. ¶ 9. On or about December 1, 2021, defendants sent a letter to Valve alleging that Myth of Empires was built "with trade secret source code copied and stolen" from defendants. Dkt. 1, Ex. 1 ("Valve Letter") at 2. Based on the Valve Letter, Valve ceased distributing Myth of Empires on or about December 7, 2021. Compl. ¶ 15. Plaintiffs allege that their business has been injured and irreparably harmed by defendants' actions in causing Valve to cease distribution of Myth of Empires. Id. ¶¶ 16, 23, 29.

Plaintiffs' complaint alleges the following claims for relief: (1) Declaratory Judgment of Non-Liability for Copyright Infringement; (2) Declaratory Judgment of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

Non-Liability for Trade Secret Misappropriation; and (3) Violation of 17 U.S.C. § 512(f).[1]  Id. ¶¶ 6-30.  Plaintiffs seek preliminary and permanent injunctions "directing Defendants to withdraw [the Valve Letter] and any other takedown notice Defendants may have sent to any distributor of Myth of Empires and restraining Defendants from interfering with the distribution of Myth of Empires."  Compl. at 5.

On December 20, 2021, defendants answered plaintiffs' complaint.  Dkt. 27 ("Ans.").  Defendants claim that Angela "stole the extraordinarily valuable source code" they created for their game Ark: Survival Evolved in order to create Myth of Empires. Id. ¶¶ 2-5.  Defendants submitted copyright registrations for Ark: Survival Evolved, and allege that in November 2018, a former employee of Snail USA's China-based parent obtained access to the Ark: Survival Evolved source code and copied it.  Id. ¶ 4. Defendants bring the following counterclaims for relief: (1) Direct Copyright Infringement (alleged by Snail USA against Angela and Imperium); (2) Contributory Copyright Infringement (alleged by Snail USA against Imperium); (3) Vicarious Copyright Infringement (alleged by Snail USA against Imperium); (4) Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (alleged by Wildcard and Snail USA against Angela and Imperium); and (5) Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. (alleged by Wildcard and Snail USA against Angela and Imperium).  Id. ¶¶ 58-103.

On December 17, 2021, plaintiffs filed an ex parte application for a temporary restraining order and for an order to show cause regarding preliminary injunction against defendants.  Dkt. 15 ("TRO").  Plaintiffs requested the Court order defendants to withdraw the Valve Letter and any other "take down" demands, and "refrain from any further attempts to induce third-parties to breach contractual obligations owed to Plaintiffs."  Id. at 2.  Plaintiffs "categorically den[ied]" that Myth of Empires was built using stolen source code.  Id. at 8–9.  Plaintiffs sought withdrawal of defendants' take down notices "without prejudice to Defendants' right to bring before this Court, and

---

[1] 17 U.S.C. § 512(f) provides that "any person who makes knowing, material misrepresentations in filing a DMCA takedown notice 'shall be liable for any damages, including costs and attorneys' fees[ ] incurred by the alleged infringer.'"  Automattic Inc. v. Steiner, 82 F. Supp. 3d 1011, 1017 (N.D. Cal. 2015) (quoting 17 U.S.C. § 512(f)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|----------|------------------------|------|---------------|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

prove, with evidence, the sharply disputed claims they have to date used . . . in self-help fashion without any judicial oversight or control." Id. at 9.

On December 23, 2021, the Court denied plaintiffs' request for a temporary restraining order, and issued an order to show cause as to why a preliminary injunction should not be issued. Dkt. 34. Following supplemental briefing from the parties, the Court found that a preliminary injunction was not appropriate. Dkt. 56. Plaintiffs appealed the Court's order denying a preliminary injunction to the Ninth Circuit, which affirmed the order on October 6, 2022. See Dkt 159.

Additionally, in the Court's order denying a preliminary injunction, the Court ordered the parties to meet and confer regarding a source code comparison, and to select a mutually agreeable independent expert, on or before February 18, 2022. Dkt. 56. The Court added that, if the parties were unable to agree upon an independent expert, on or before February 28, 2022, they would each be required to submit the name and contact information of two proposed experts for the Court's review. Id. The Court indicated that it would work with the Hon. Steve Kim, U.S. Magistrate Judge, to whom this case was assigned for discovery issues, to determine the appropriate neutral expert and the appropriate source code review protocol. See Dkt. 71.

The parties were unable to agree upon an independent expert for the source code comparison, and therefore each submitted the names and curricula vitae of two proposed experts on February 28, 2022. Dkts. 68-69. On March 7, 2022, at a hearing before Judge Kim and this Court, the Court indicated that it intended to appoint one of plaintiffs' nominees, Robert Zeidman, as the Court's Rule 706 neutral expert in the area of source code comparison. Dkt. 79. On March 9, 2022, the Court formally appointed Zeidman as the Court's Rule 706 neutral expert in the area of source code comparison, subject to Zeidman consenting to the appointment. Dkt. 80. On March 14, 2022, Zeidman accepted his appointment as neutral expert pursuant to Rule 706. Dkt. 81.

On April 18, 2022, Judge Kim ordered the parties to file a joint report regarding the protocol for Zeidman's source code comparison, including any areas of remaining disagreement, on or before April 22, 2022. Dkt. 85. On April 22, 2022, the parties submitted a joint report regarding the protocol for Zeidman's source code comparison. Dkt. 88. On April 25, 2022, after reviewing the parties' joint report, Judge Kim entered an order (the "April 25 Order") outlining the procedure for Zeidman's neutral source

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

code comparison.  Dkt. 90.  On May 9, 2022, plaintiffs filed a Rule 72 motion for review of and objections to the April 25 Order, which the Court denied on June 6, 2022.  See Dkt. 109.

In September 2022, Zeidman completed the draft of his report and circulated it to the Court and to the parties.  See Dkt. 197-12 ("Zeidman Report").  After a three-week review period elapsed during which the parties could raise comments and concerns, Zeidman adopted the draft as his final report.[2]  Plaintiffs thereafter noticed and took a deposition of Zeidman on October 18, 2022.

On December 5, 2022, plaintiffs filed a motion to strike Zeidman's expert report. Dkt. 197 ("Mot.").  On December 14, 2022, defendants filed an ex parte application, which plaintiffs opposed, to stay plaintiffs' motion to strike to allow Zeidman an opportunity to respond to the issues raised in plaintiffs' motion.  See Dkts. 212, 215.  On December 16, 2022, the Court granted defendants' ex parte application, directing Zeidman to file a responsive statement to plaintiffs' motion and resetting the parties' briefing schedule on the motion.  Dkt. 218.

On December 30, 2022, Zeidman submitted his responsive statement to the Court and the parties.  See Dkt. 233-3 ("Zeidman Response").  On January 23, 2023, defendants filed an opposition to plaintiffs' motion.  Dkt. 233 ("Opp.").  On February 10, 2023, plaintiffs filed a reply.  Dkt. 245 ("Reply").

On February 27, 2023, the Court held a hearing.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

For purposes of the instant motion, the Court provides a brief overview of the parties' video games and conduct leading to the instant litigation, as well as background on the Court's appointment of Zeidman as a neutral expert.  A more comprehensive

---

[2] Plaintiffs submitted non-substantive questions to Zeidman that they later withdrew, and at the end of the review period, they confirmed that they had "no further questions."  See Dkt. 160-5 at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

background of the parties' video games and pre-litigation conduct is set forth in the Court's separate order addressing defendants' motion for a bond.

### A.     The parties' games and conduct give rise to litigation.

As stated above, SWC developed and published a game called Ark, which was first published as an "early access" version on Valve's Steam platform on June 2, 2015. Ans. ¶ 41. Thereafter, SWC published the first completed, retail version of Ark on August 29, 2017 for Microsoft Windows, Sony's Play Station 4, and Microsoft's Xbox One, later releasing additional versions for the Nintendo Switch and Android iOS in 2018. Id. ¶ 42. SWC registered the following copyrights, U.S. Copyright Registration Nos. TX0008844750 (for the Nintendo Switch version), TX0008850188 (for the PlayStation 4 version), and TX0008850190 (for the Xbox One version) (collectively, the "console versions"). Id. ¶ 44. Additionally, SWC alleges that "[t]hroughout Ark's development, Wildcard and Snail USA took steps to ensure that the code created for Ark was maintained in confidence by their employees." Id. ¶ 40. SWC alleges that between June and November 2020, many employees of Snail USA's parent company in China left to form Angela, including employees who had access to Ark's source code. Id. ¶ 45.

Angela is the developer and owner of a videogame entitled Myth of Empires. Compl. ¶ 6. Until December 2021, Myth of Empires was available for sale to video game consumers on Valve's Steam platform. Id. ¶ 9. On or about December 1, 2021, defendants sent a letter to Valve alleging that Myth of Empires was built "with trade secret source code copied and stolen" from defendants. Dkt. 1, Ex. 1 ("Valve Letter") at 2. Based on the Valve Letter, Valve ceased distributing Myth of Empires on or about December 7, 2021. Compl. ¶ 15. Two days later, on December 9, 2021, plaintiffs filed the instant action, alleging that their business has been injured and irreparably harmed by defendants' actions in causing Valve to cease distribution of Myth of Empires. Id. ¶¶ 16, 23, 29.

### B.     Judge Kim establishes the Court's source code review protocol.

As stated above, on March 9, 2022, the Court formally appointed Robert Zeidman as the Court's Rule 706 neutral expert in the area of source code comparison, and Zeidman accepted his appointment on March 14, 2022. Dkts. 80, 81.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

On April 25, 2022, Judge Kim entered the April 25 Order, which outlines the procedure for Zeidman's source code comparison. Dkt. 90. That procedure is as follows:

1. **Party Deliverables**. The parties will make the following deliverables (the "Party Deliverables") available to the Neutral no later than seven calendar days from this order:

   a. **Plaintiffs' Deliverables.** Plaintiffs shall provide the Neutral with (1) Plaintiffs' Subversion repository for Myth of Empires ("MoE"), and (2) an identification of the specific version of MoE within Plaintiffs' MoE Subversion repository that is capable of being compiled into the executable file for MoE that was available from Valve Corporation's Steam platform (the "MoE Source Code") on November 18, 2021.

   b. **Defendants' Deliverables.** Defendants shall provide the Neutral with (1) Defendants' Subversion repository for Ark: Survival Evolved ("Ark") and Atlas, (2) Defendants' complete responses to Plaintiffs' First Set of Interrogatories, including all exhibits thereto, which responses include an identification of the specific code branches and revisions that correspond to the copyrights and trade secrets asserted in this litigation, as well as an identification of third party code found within the same code files, and (3) a copy of the "diff" files that have been made available for inspection at the offices of Defendants' outside counsel, which diff files are referenced in Defendants' responses to Plaintiffs' First Set of Interrogatories.

2. **Validating the Party Deliverables.** The Neutral shall use commercially reasonable and technically appropriate methods, as well as the interrogatory responses produced by Defendants, to verify and validate the Party Deliverables, including a verification that the delivered code repositories are complete, within 10 calendar days of receiving the Party Deliverables.

3. **Source Code Comparison.** After the Neutral has validated and verified the Party Deliverables and provided notice of same in writing to the Parties and the Court, the Neutral shall have 30 calendar days to conduct the following

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### [REDACTED] CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | March 9, 2023 |
|---|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

comparison and evaluation of the source code produced by the Parties using commercially reasonable and technically appropriate methods. These tasks shall include:

a.  The filtering out any third-party code, as identified in Defendants' responses to Plaintiffs' First Set of Interrogatories, including all exhibits thereto and the diff files produced by the Defendants (the "Third-Party Source Code Filtration").

b.  After the Third-Party Source Code Filtration, a literal and non-literal comparison of each version of the Ark and Atlas source code identified in Defendants' response to Plaintiffs' Interrogatory No. 5 with Plaintiffs' November 18, 2021 MoE Source Code (the "Ark/MoE Comparison").

c.  An evaluation of whether, in the Neutral's opinion, the results of the Ark/MoE Comparison indicates that Plaintiffs' November 18, 2021 MoE Source Code includes any literal copying of source code from any version of the Ark and Atlas source code identified in Defendants' response to Plaintiffs' Interrogatory No. 5.

d.  An evaluation of whether, in the Neutral's opinion, the results of the Ark/MoE Comparison indicates that Plaintiffs' November 18, 2021 MoE Source Code includes any non-literal copying of the (i) structure, (ii) sequence, (iii) organization, or (iv) menu structures from any version of the Ark and Atlas source code identified in Defendants' response to Plaintiffs' Interrogatory No. 5. This evaluation shall not compare or examine, however, either the User Interface or Screen Displays, unless later stipulated by the parties or ordered by the Court.

4.  **Certificate of Completion and Report to Court.** Upon the Neutral's completion of the Ark/MoE Comparison, the Neutral shall certify to the Parties and the Court in writing that he has completed those tasks. Within 21 calendar days thereafter, the Neutral shall provide his findings to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## [REDACTED] CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | March 9, 2023 |
|---|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

Parties in a draft written report.  Within seven calendar days thereafter, the Parties shall provide to the Neutral in writing any questions they may have regarding the Neutral's draft written report.  The Neutral shall then have 14 additional calendar days to prepare and submit a final written report to the Parties and the Court.  During that 14-day, the Neutral may conduct any follow-up discussions with the Parties regarding their questions (subject to the limits of paragraph five below).  The Neutral may also perform additional code comparison and analysis during that period as the Neutral sees fit in order to complete his final written report.

5. **No Ex Parte Communications.** All Parties shall be notified by the Court of any ex parte communications between the Neutral and the Court. At no time before the entry of final judgment in this case shall the Neutral communicate with any Party outside the presence of all Parties.  Any communications between the Parties and the Neutral shall be initiated initially through email to all counsel of record, following which telephonic, video, or in-person discussions may take place provided that all Parties are represented therein.

For good cause shown, either the Parties or the Neutral may request or stipulate in writing for modifications to this order, including its deadlines, provided that nothing in such request or stipulation will conflict or interfere with the District Court's scheduling order.  Dkt. 90.

On April 26, 2022, the Court added that "the parties are ordered to lodge the Neutral's draft report with this Court, as well as with [Judge] Kim, when received."  Dkt. 92.

### C.     Zeidman creates his expert report.

Zeidman was given access to the source code from both parties' games, Ark and Myth of Empires.  Zeidman removed duplicate files within both sets of source code to eliminate duplicates from the comparison.  Zeidman Report ¶ 55.  After conferring with both parties' counsel on May 26, 2022, Zeidman confirmed that he was to use all of Angela's provided files for the source code comparison, while being referred to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

specific files listed in Exhibits A and B of SWC's responses to Angela's First Set of Interrogatories for using SWC's files for the comparison. Id. ¶ 56.[3]

Zeidman worked with the parties to devise a procedure for addressing the presence of third-party Unreal Engine code in the parties' source code. On July 3, 2022, he proposed two options, the first involved ███████████████ ███████████████████████████████ and the second involved ██████████ ███████████████████████ Id. ¶ 57. Both parties agreed to the first option so he ran a CodeDiff comparison of Unreal Engine version 4.26.1 source code and removed every Angela code file that matched 100% with any Unreal Engine source code file with the same name. Id. ¶ 58.

Additionally, Zeidman conducted a manual search of specific terms within the parties' source code files to find ███████████████ including each party's company name and programmer names. Id. ¶¶ 60–62. He then utilized a step-by-step method to evaluate correlations identified by CodeMatch, looking to see whether there was third-party source code, code generation tools, common code elements, common algorithms, a common author to explain the correlations between identical or similar code. Id. ¶¶ 63–76.

Section E of Zeidman's report is titled ██████████████ The first three subsections address Exhibits F, G, and H, of his report, which are tables of statements, comments, and identifiers ███████████████ or ████████████ █████████ Id. ¶¶ 79–81. According to Zeidman, these statements, comments, and identifiers were ████████████████████████████████ Id. In the remaining eleven subsections, Zeidman highlights and compares specific instances of overlap in the parties' code (*e.g.*, ██████████████████████████████████). Id. ¶¶ 82–111.

---

[3] Zeidman kept ████████████████████████████████ ███████████████████████████████████ ████████████████████████████ Id. Plaintiffs did not object to this decision at the time Zeidman communicated it in an email to the parties on May 26, 2022. See Zeidman Response at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL          'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | March 9, 2023 |
|----------|------------------------|---|------|----------------|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

Ultimately, Zeidman concluded that Angela ███████████████████████████
████████████████████████████████ Id. ¶ 114.

### D.     Zeidman distributes a draft of the report for the parties to raise comments and concerns.

On September 5, 2022, Zeidman distributed a draft of his report to the parties, writing:

> I propose to give each party three weeks to review the report and respond with any evidence that I should consider to change my conclusions. I am doing this because I have found many versions of Unreal Engine code and many versions of third-party code available on the Internet, and I am open to the possibility that I missed something. After the three-week period is over, I will take two weeks to reconsider my conclusion. If the evidence has not changed my mind, my report will stand. If the evidence changes my mind on any points, I will revise my report.

Dkt. 160-2 at 2.  The parties accepted Zeidman's review proposal, and on September 12, 2022, Judge Kim granted the parties' stipulation and ordered that the "parties shall respond to the Court appointed Neutral's report with any additional evidence or questions no later than September 29, 2022."  Dkt. 148 at 2.

During the review period, plaintiffs raised no substantive questions to Zeidman, so Zeidman adopted the draft as the final iteration of his report.  Thereafter, plaintiffs noticed a deposition of Zeidman.  Defendants filed an ex parte application to stay the deposition pending resolution of discovery issues between the parties.  Dkt. 160.  On October 13, 2022, Judge Kim denied defendants' ex parte application "on the understanding that Plaintiff has agreed it will present no new evidence or documents at the deposition that were unavailable to Mr. Zeidman while performing his source code review and preparing his final report.  Indeed, Plaintiff has waived its chance to bring new evidence or documents to Mr. Zeidman's attention by not doing so during the parties' allotted three-week review period after the disclosure of the draft report."  Dkt. 163.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | March 9, 2023 |
|---|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

On October 18, 2022, plaintiffs deposed Zeidman.  On December 5, 2022, plaintiffs filed the instant motion to strike.

## III.  LEGAL STANDARD

Federal Rule of Evidence (hereinafter, "Rule") 402 states in relevant part that ". . . Evidence which is not relevant is not admissible."  "Relevant evidence" is "any evidence having any tendency to make the existence of any fact that is of consequence of the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay[] [and] waste of time . . . ."  Rule 403 requires the prejudice be "unfair."  U.S. v. Young (D.S.D. 1990) 754 F.Supp. 739, 742.  "Unfair" in this context means the evidence has an undue tendency to suggest to a jury decision based upon an improper basis, usually an emotional one.  Id. at 742.  Additionally, where evidence is not closely related to the issue being litigated and is otherwise irrelevant, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice.  U.S. v. Guerrero, 756 F.2d 1342, 1348 (9th Cir. 1984); U.S. v. Black, 20 F.3d 1458, 1464 (9th Cir. 1994).

Additionally, Rule 702 allows for expert testimony, subject to certain requirements and conditions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Rule 702 inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93 (1993).  The district court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

must also "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93). Daubert's "gatekeeping obligation" "applies not only to testimony based on 'scientific' knowledge but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Company v. Carmichael, 526 U.S. 137, 141 (1999). "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

Finally, Rule 706 provides that "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing." Thus, "Rule 706 allows the court to appoint a neutral expert on its own motion, whether or not the expert is agreed upon by the parties." Students of California Sch. for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir. 1984), judgment vacated on other grounds, 471 U.S. 148 (1985). "Appointments under Rule 706 are reviewable only for abuse of discretion," and so long as the appointment follows the requirements of Rule 706, including the ability of both parties to "thoroughly cross-examine" the Court's appointed expert, such appointment is "proper." Id. "Rule 706 powers are properly invoked where the issues are complex and the parties' experts have presented conflicting testimony that is difficult to reconcile or have otherwise failed to provide a sufficient basis for deciding the issues." 29 Charles A. Wright et al., Fed. Prac. & Proc. Evid. § 6302 (2d ed. 2022)).

## IV.  DISCUSSION

Plaintiffs raise numerous objections to Zeidman's expert report. The majority of these objections relate to three categories: (1) the information given to Zeidman (or lack thereof) that he relied upon to create his report, (2) the application of his methodology, and (3) the inferences and conclusions he arrived at. According to plaintiffs, as much as 95% of the "indicators of copying" identified in Zeidman's report come directly from third-party Epic Games code, including the Unreal Engine. Zeidman, plaintiffs claim, failed to properly filter out this third-party code, and so he thereby erroneously attributes copying to be the explanation for the occurrence of such code in Angela's source code. Additionally, plaintiffs argue that he has demonstrated a bias against plaintiffs throughout

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

these proceedings, particularly by taking an argumentative stance in his responsive statement, that makes him inappropriate to serve as a Court-appointed neutral expert. Mot. at 25; Reply at 16–17. Finally, plaintiffs argue that because Zeidman's report presents "only isolated fragments of code" and "provides no indication of which SWC files each fragment came from," his report cannot be easily checked or verified. Mot. at 7; Reply at 12–13.[4]

In his response, Zeidman states that he filtered out third-party code, including Unreal Engine code, in accordance with a procedure he proposed and to which all parties agreed. Zeidman Response at 6–7. To the extent that the ███████████████ identified in his expert report contain third-party code, Zeidman asserts that plaintiffs' focus on third-party code misses the point because ████████████████████ ██████████████████████ *Id.* at 14. According to Zeidman, in light of the evidence he had access to during his source code comparison, it is reasonable to draw inferences from the ███████████████ to conclude that, rather than independently drawing upon the same third-party code, Angela instead copied source code files from SWC, which contain SWC's usage and modifications of third-party code. *Id.* at 15–16.

Additionally, defendants' opposition argues that while plaintiffs attempt to challenge Zeidman's analysis with respect to five file comparisons he made in his report, plaintiffs do not challenge five other file comparisons. <u>Compare</u> Mot. at 7–13 (raising objections to comparisons identified in Sections V.E.4, V.E.7, V.E.9, V.E.10, and V.E.13 of Zeidman's report); <u>with</u> Opp. at 5–7 (describing plaintiffs' failure to dispute comparisons identified in Sections V.E.5, V.E.6, V.E.8, V.E.12, and V.F.1 of Zeidman's report). Accordingly, defendants argue that Zeidman "provided at least five opinions supporting his ultimate conclusion that Angela copied that [plaintiffs] failed to attack," and so there is no basis to strike Zeidman's report in its entirety. <u>Id.</u> at 7. Moreover, defendants claim that plaintiffs have obstructed Zeidman's creation of his report and have

---

[4] Plaintiffs also raise other arguments, including that Angela's source code has not appeared within the United States for purposes of copyright infringement and that Zeidman's report violates the party presentation principle, <u>see</u> Mot. at 22–24, that are either unrelated to the relevant <u>Daubert</u> standard, or have already been considered and rejected in the Court's prior orders. <u>See</u> Dkt. 109.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL        'O'**

| Case No. | 2:21-cv-09552-CAS-SKx | | Date | March 9, 2023 |
|----------|------------------------|--|------|----------------|
| Title    | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | | |

failed to appropriately bring their concerns to his or the Court's attention throughout the process.  Opp. at 13–18.

The Court does not find plaintiffs' objections to raise an appropriate basis for the exclusion of Zeidman's report and testimony in the litigation.  First, plaintiffs do not challenge the qualifications or expertise of Zeidman, whom plaintiffs initially offered as an expert.  Instead, plaintiffs object to Zeidman's application of his source code comparison methodology and the inferences and conclusions he drew in his report.  These are of course valid bases for impeachment, cross-examination, and contrary evidence, but not for exclusion under <u>Daubert</u>, where the Court must only "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." <u>City of Pomona v. SQM N. Am. Corp.</u>, 750 F.3d 1036, 1044 (9th Cir. 2014) (internal citation omitted).  Plaintiffs have made no showing that Zeidman's report is fundamentally unsound—"[s]imply put, [this Court] is not tasked with deciding whether [Zeidman] is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." <u>Id.</u>

Additionally, as to plaintiffs' objection of bias, it appears that Zeidman's expert report is even-handed and does not demonstrate bias.  While Zeidman's response to this motion is argumentative in some respects, the Court does not consider this to undermine his neutrality.  In any event, Zeidman's supplemental response will not be received into evidence.

Subject to the limitations of the Federal Rules of Evidence, the Court intends to permit the parties to utilize Zeidman's report and testimony at trial.  Zeidman's opinion will be subject to cross-examination, and to the extent either side disagrees with his opinions, the parties will be able to proffer their own expert testimony and evidence.  <u>See</u> Fed. R. Evid. 706(e) ("This rule does not limit a party in calling its own experts.").  Any party's own expert opinions will of course likewise be admitted subject to the limitations of the Federal Rules of Evidence.

The parties are directed to meet and confer with each other, and with Zeidman, to address any of plaintiffs' redressable objections to the Zeidman report.  For example, to the extent that plaintiffs argue that Zeidman failed to consider certain code—such as a different version of the Unreal Engine code than the one Zeidman used or Epic's ShooterGame code—it appears Zeidman was not provided with such code.  Zeidman

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## [REDACTED] CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

could be provided with third-party code plaintiffs identify in their briefing so he can conduct an appropriate analysis.  Similarly, to the extent plaintiffs argue that Zeidman's report does not sufficiently provide an indication of which SWC files his ▮▮▮▮▮▮ ▮▮▮▮▮▮ come from, Zeidman can be directed to provide or explain how to access that information.  If the parties cannot resolve plaintiffs' objections, they are directed to schedule a hearing before Judge Kim to enable him to resolve any remaining objections.

## V.   CONCLUSION

In accordance with the foregoing, plaintiffs' motion to strike is **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
| Initials of Preparer | | CMJ | |