UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:         Attorneys Present for Defendants:

Not Present                                         Not Present

**Proceedings:**   **(IN CHAMBERS) [REDACTED] DEFENDANTS' MOTION FOR A BOND PURSUANT TO C.C.P. § 1030 (Dkt. 176, filed on NOVEMBER 15, 2022)**

## I.  INTRODUCTION

On December 9, 2021, plaintiffs Suzhou Angela Online Game Technology Co., Ltd. ("Angela") and Imperium Interactive Entertainment Limited ("Imperium") filed the instant action against defendants Snail Games USA Inc. ("Snail USA") and Wildcard Properties LLC ("Wildcard"). See Dkt. 1 ("Compl."). Angela is the developer and owner of a videogame entitled "Myth of Empires." Id. ¶ 6. Until recently, Myth of Empires was "offered, distributed, and made available to end users" by the Valve Corporation ("Valve"), a third-party platform that is not a party to this litigation. Id. ¶ 9. On or about December 1, 2021, defendants sent a letter to Valve alleging that Myth of Empires was built "with trade secret source code copied and stolen" from defendants. Dkt. 1, Ex. 1 ("Valve Letter") at 2. Based on the Valve Letter, Valve ceased distributing Myth of Empires on or about December 7, 2021. Compl. ¶ 15. Plaintiffs allege that their business has been injured and irreparably harmed by defendants' actions in causing Valve to cease distribution of Myth of Empires. Id. ¶¶ 16, 23, 29.

Plaintiffs' complaint alleges the following claims for relief: (1) Declaratory Judgment of Non-Liability for Copyright Infringement; (2) Declaratory Judgment of Non-Liability for Trade Secret Misappropriation; and (3) Violation of 17 U.S.C. §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

512(f).¹  Id. ¶¶ 6-30.  Plaintiffs seek preliminary and permanent injunctions "directing Defendants to withdraw [the Valve Letter] and any other takedown notice Defendants may have sent to any distributor of Myth of Empires and restraining Defendants from interfering with the distribution of Myth of Empires."  Compl. at 5.

On December 20, 2021, defendants answered plaintiffs' complaint.  Dkt. 27 ("Ans.").  Defendants claim that Angela "stole the extraordinarily valuable source code" they created for their game Ark: Survival Evolved in order to create Myth of Empires. Id. ¶¶ 2-5.  Defendants submitted copyright registrations for Ark: Survival Evolved, and allege that in November 2018, a former employee of Snail USA's China-based parent obtained access to the Ark: Survival Evolved source code and copied it.  Id. ¶ 4. Defendants bring the following counterclaims for relief: (1) Direct Copyright Infringement (alleged by Snail USA against Angela and Imperium); (2) Contributory Copyright Infringement (alleged by Snail USA against Imperium); (3) Vicarious Copyright Infringement (alleged by Snail USA against Imperium); (4) Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (alleged by Wildcard and Snail USA against Angela and Imperium); and (5) Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. (alleged by Wildcard and Snail USA against Angela and Imperium).  Id. ¶¶ 58-103.

On December 17, 2021, plaintiffs filed an ex parte application for a temporary restraining order and for an order to show cause regarding preliminary injunction against defendants.  Dkt. 15 ("TRO").  Plaintiffs requested the Court order defendants to withdraw the Valve Letter and any other "take down" demands, and "refrain from any further attempts to induce third-parties to breach contractual obligations owed to Plaintiffs."  Id. at 2.  Plaintiffs "categorically den[ied]" that Myth of Empires was built using stolen source code.  Id. at 8-9.  Plaintiffs sought withdrawal of defendants' take down notices "without prejudice to Defendants' right to bring before this Court, and prove, with evidence, the sharply disputed claims they have to date used . . . in self-help fashion without any judicial oversight or control."  Id. at 9.

---

¹ 17 U.S.C. § 512(f) provides that "any person who makes knowing, material misrepresentations in filing a DMCA takedown notice 'shall be liable for any damages, including costs and attorneys' fees[ ] incurred by the alleged infringer.'"  Automattic Inc. v. Steiner, 82 F. Supp. 3d 1011, 1017 (N.D. Cal. 2015) (quoting 17 U.S.C. § 512(f)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

On December 23, 2021, the Court denied plaintiffs' request for a temporary restraining order, and issued an order to show cause as to why a preliminary injunction should not be issued. Dkt. 34. Following supplemental briefing from the parties, the Court found that a preliminary injunction was not appropriate. Dkt. 56. Plaintiffs appealed the Court's order denying a preliminary injunction to the Ninth Circuit, which affirmed the order on October 6, 2022. See Dkt 159.[2]

On November 15, 2022, defendants filed a motion for a bond. Dkt. 176 ("Mot."). On December 5, 2022, plaintiffs filed an opposition. Dkt. 194 ("Opp."). On January 9, 2023, defendants filed a reply. Dkt. 224 ("Reply"). On February 14, 2023, plaintiffs filed a surreply ("Surreply").

On February 27, 2023, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

As stated above, SWC developed and published a game called Ark, which was first published as an "early access" version on Valve's Steam platform on June 2, 2015. Ans. ¶ 41. Thereafter, SWC published the first completed, retail version of Ark on August 29, 2017 for Microsoft Windows, Sony's Play Station 4, and Microsoft's Xbox One, later releasing additional versions for the Nintendo Switch and Android iOS in 2018. Id. ¶ 42. SWC registered the following copyrights, U.S. Copyright Registration Nos. TX0008844750 (for the Nintendo Switch version), TX0008850188 (for the PlayStation 4 version), and TX0008850190 (for the Xbox One version) (collectively, the "console

---

[2] Additionally, in the Court's order denying a preliminary injunction, the Court ordered the parties to meet and confer regarding a source code comparison, and to select a mutually agreeable independent expert, on or before February 18, 2022. Dkt. 56. On March 9, 2022, the Court formally appointed Robert Zeidman, one of plaintiffs' nominees, as the Court's Rule 706 neutral expert in the area of source code comparison. Dkt. 80. On March 14, 2022, Zeidman accepted his appointment as neutral expert pursuant to Rule 706. Dkt. 81. Zeidman submitted his expert report to the Court and the Parties in September 2022. Zeidman's report is the subject of a motion to strike filed by plaintiffs, which is addressed in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**           'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

versions"). Id. ¶ 44. Additionally, defendants allege that "[t]hroughout Ark's development, Wildcard and Snail USA took steps to ensure that the code created for Ark was maintained in confidence by their employees." Id. ¶ 40. Specifically, defendants claim they have taken precautions to protect the Ark source code, including requiring employees to sign employment contracts "in which they promised to maintain the source code in confidence," and storing the source code "on a secure server that could be accessed by only those employees who were given login credentials." See Dkt. 29-6, ¶ 4). SWC alleges that between June and November 2020, many employees of Snail USA's parent company in China left to form Angela, including employees who had access to Ark's source code. Ans. ¶ 45.

Angela is the developer and owner of a video game entitled Myth of Empires, which began development in 2018. Compl. ¶¶ 6, 7. 60 of the 82 Angela employees listed on Myth of Empire's credits were former employees of Snail Games, including Yang Li Ping, who has confirmed he had access to and downloaded Ark's source code while employed by Snail Games. See Dkts. 29-1 at 7; 29-6 at 5; 29-12 at 2. Plaintiff Imperium entered into a Steam distribution agreement with non-party Valve on July 5, 2020 on behalf of Myth of Empires.³ Between November 2021 until December 2021, Myth of Empires was available for sale to video game consumers on Valve's Steam platform. Compl. ¶ 9.

Defendants became concerned that Angela had used SWC's source code to create Myth of Empires and ran preliminary comparisons based on available code at that time. On or about December 1, 2021, defendants sent a letter to Valve alleging that Myth of Empires was built "with trade secret source code copied and stolen" from defendants. Dkt. 1, Ex. 1 ("Valve Letter") at 2. Based on the Valve Letter, Valve ceased distributing Myth of Empires on or about December 7, 2021. Compl. ¶ 15. Two days later, on

---

³ As stated above, the plaintiffs in this litigation are Suzhou Angela Online Game Technology Co., Ltd. and Imperium Interactive Entertainment Limited, which have their principal places of business respectively in Suzhou and Hong Kong, China. Plaintiffs contend that defendants conflate plaintiff Imperium with another company, Imperium Technology Group Limited ("Imperium Technology"), which plaintiffs assert is a "separate company that does not assume the liabilities of Angela or Imperium." Opp. at 18 n.4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

December 9, 2021, plaintiffs filed the instant action, alleging that their business has been injured and irreparably harmed by defendants' actions in causing Valve to cease distribution of Myth of Empires. Id. ¶¶ 16, 23, 29.

### III.  LEGAL STANDARD

While nothing in the Federal Rules of Civil Procedure requires a plaintiff to post security for a defendant's costs or attorneys' fees, district courts nevertheless have inherent authority to impose such a bond requirement, and federal courts often look to the forum state's procedural rules when determining whether to require an undertaking. Simulnet East Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 574 (9th Cir. 1994) (citing 10 Wright & Miller, et al., Federal Practice & Procedure, Civil § 2671).  Although federal courts often look to state statutes for such guidance, they are neither required to do so nor bound to follow the state procedural law in all respects.  See Wilson v. Haubert, PLLC v. Yahoo! Inc., No. C–13–5879 EMC, 2014 WL 1351210, at *2 (N.D. Cal. Apr. 4, 2014) (noting that the application of state law in this area is within the Court's discretion); Wright & Miller § 2671 ("Even though the district court may look to state practice, it is under no compulsion to do so." (citing Jefferson v. Stockholders Publ'g Co. ., 194 F.2d 281 (9th Cir.1952))).

Here, the relevant state statute is California Code of Civil Procedure Section 1030, which provides:

> (a) When the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding.  For the purposes of this section, "attorney's fees" means reasonable attorney's fees a party may be authorized to recover by a statute apart from this section or by contract.
>
> (b) The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### [REDACTED] CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

Cal. Code Civ. Proc. § 1030. For purposes of section 1030(b), "the 'reasonable possibility' standard is relatively low." Wilson & Haubert, 2014 WL 1351210, at *3; see Baltayan v. Estate of Getemyan, 90 Cal.App.4th 1427, 1432 (2001) ("Respondents were not required to show that there was no possibility that appellant could win at trial, but only that it was *reasonably possible* that respondents would win." (emphasis in original)). Still, courts within the Ninth Circuit have "decline[d] to read section 1030 so broadly as to require every out-of-state litigant who brings a non-frivolous suit in California to post a bond simply because there is a reasonable chance the defendant *may* prevail." Wilson & Haubert, 2014 WL 1351210, at *3 (emphasis in original).

Therefore, when a district court considers whether to require a plaintiff to post a bond for defendants' costs, "care must be taken not to deprive a plaintiff of access to the federal courts." Simulnet, 37 F.3d at 575–576. Consequently, the Ninth Circuit has explained that a court considering whether to require a plaintiff to post an undertaking should balance "(i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective." Id. at 576 (citing Aggarwal v. Ponce School of Medicine, 745 F.2d 723, 727–728 (1st Cir. 1984)). Any bond required must be "fair in the light not only of the case itself and of the exigencies faced by the defendant, but also fair when illuminated by the actual financial situation of the plaintiff." Id. The Ninth Circuit reviews for abuse of discretion a district court's decision whether to require a bond. Simulnet, 37 F.3d at 574.

### IV.    DISCUSSION

####   A.    Whether Angela and Imperium are out-of-state plaintiffs for the purpose of Section 1030.

Defendants argue that there can be no dispute that plaintiffs reside out-of-state as foreign corporations located in China. Mot. at 15. Moreover, defendants contend that Angela and Imperium are "plaintiffs" for the purpose of Section 1030 because, notwithstanding defendants' own asserted counterclaims, Angela and Imperium seek affirmative relief in the case. Specifically, in addition to claims for declaratory judgments that they are not liable to defendants for copyright infringement or trade secret misappropriation, plaintiffs bring a claim for monetary damages under 17 U.S.C. § 512(f)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**         'O'

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

for defendants' violation of the DMCA and request injunctive relief to order defendants to withdraw their infringement takedown notices and restrain them from interfering with the distribution of plaintiffs' Myth of Empires.[4]

In opposition, Angela and Imperium argue that they are plaintiffs "in name only" and therefore do not meet the requirements under Section 1030(a). Opp. at 6. According to plaintiffs, while they were the first ones to initiate the lawsuit, they only did so as a proactive way of defending themselves against defendants' own asserted claims and interests. Plaintiffs argue that they are functionally defendants with respect to the copyright infringement and trade secret misappropriation claims in the case. Id.

The Court agrees with defendants that the requirement of Section 1030(a) is met in this case. Although plaintiffs are correct in pointing out that defendants have asserted their own counterclaims, and that the parties' claims are inextricably intertwined with each other, Angela and Imperium are ultimately the plaintiffs in this litigation. See Yao v. Superior Ct., 104 Cal. App. 4th 327, 331–33 (2002) (cross-complaint defendant—*i.e.*, a plaintiff in the original action—cannot make a motion based on Section 1030 because "[S]ection 1030 unambiguously refers only to a 'plaintiff' "). The DMCA provides a pre-litigation procedure for Angela and Imperium to respond to defendants' takedown notices on Valve and other platforms; however, Angela and Imperium elected to sue defendants instead, including seeking monetary damages for a false takedown in violation of the DMCA. See 17 U.S.C. § 512(g). Although plaintiffs have every right to seek the recourse they believe is warranted, they cannot selectively avail themselves of the law (here, seeking a TRO or preliminary injunction rather than pursuing the DMCA's prelitigation counter-notice procedure) while ignoring legal provisions less favorable to themselves (here, their status as a plaintiff for the purpose of Section 1030).

**B.    Whether there is a "reasonable possibility" that defendants will obtain judgment in this litigation.**

As stated above, Section 1030(b) requires defendants to show that "there is a reasonable possibility that the moving defendant[s] will obtain judgment in the action or

---

[4] Additionally, plaintiffs sought leave to amend their complaint, which the Court grants in a separate order, adding a cause of action for declaratory judgment that defendants' copyright registrations asserted in this case are invalid. See Dkt. 174.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | [REDACTED] CIVIL MINUTES – GENERAL | 'O' |
|---|---|---|
| Case No. | 2:21-cv-09552-CAS-SKx | Date  March 9, 2023 |
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | |

special proceeding.  The standard is a "relatively low one."  GmbH v. Cloud Imperium Games Corp., 2019 WL 4149337, at *2 (C.D. Cal. July 22, 2019) ("This hurdle is a relatively low one . . . the Ninth Circuit has held that district courts do not abuse their discretion by requiring a security when it would not be illogical, implausible, or without support in the record to conclude that there [is] a reasonable possibility that [the defendant] would prevail and be entitled to fees and costs.") (quoting Pittman ex rel. L.P. v. Avish P'ship, 525 F. App'x 591, 593 (9th Cir. 2013).  "Reasonable *possibility*" is therefore a lower threshold to meet than "reasonable *probability* or likelihood."  See AF Holdings LLC v. Navasca, No. C-12-2396 EMC, 2013 WL 450383, at *2 (N.D. Cal. Feb. 5, 2013) (emphasis added).

  Accordingly, defendants must show that they have a "reasonable possibility" of obtaining judgment as to plaintiffs' claims for declaratory judgment of non-liability for copyright infringement and trade secret misappropriation, and for violation of the DMCA's notice-and-take down provision pursuant to 17 U.S.C. § 512(f).  "To prevail on a copyright infringement claim, a plaintiff must show that (1) he or she owns the copyright in the infringed work, and (2) the defendant copied protected elements of the copyrighted work."  Williams v. Gaye, 895 F.3d 1106, 1119 (9th Cir. 2018).  To prevail on a trade secret misappropriation claim, a plaintiff must show "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff."  Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).  In a declaratory judgment action, the burden of proving infringement remains with the rightsholder."  Beyond Blond, 479 F. Supp. 3d at 880-881; see also Marya v. Warner/Chappell Music, Inc., 131 F. Supp. 3d 975, 984 (C.D. Cal. 2015) ("[T]here is no reason to relieve the alleged owners of the intellectual property of the usual burden of proof just because they are nominally the defendants in this declaratory judgment action.").  As to the DMCA claim, "if an entity abuses the DMCA, it may be subject to liability under § 512(f)," which provides in pertinent part that "[a]ny person who knowingly materially misrepresents under this section—(1) that material or activity is infringing . . . shall be liable for any damages."  Lenz v. Universal Music Corp., 815 F.3d 1145, 1151 (9th Cir. 2016) (quoting 17 U.S.C. § 512(f)).

  Defendants argue that there is substantial evidence to establish "more than a reasonable possibility" they will obtain judgment in the litigation.  Specifically,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

defendants cite to the evidence the Court "already considered and credited" in its prior orders denying injunctive relief on behalf of plaintiffs, including:

> (i) the results of a preliminary code analysis showing "hundreds of near-identical function names" between the two games; (ii) the declaration of a computer code expert who concluded that the " 'extent of similarities already identified . . . raises serious concerns that computer source code for MoE was copied from SWC's computer source code' "; (iii) evidence showing that "of the 82 Angela Games employees who worked on MoE, 60 are ex-employees of Snail Games who quit to join Angela Games in 2019," around the time when Angela started developing MoE; and (iv) evidence showing that "at least one of those employees, Yang Li Ping, was given access to the Ark code base."

Opp. at 7 (citing Dkt. 56 at 15) (internal formatting changes omitted). Defendants additionally claim they have taken precautions to protect the Ark source code as a trade secret, including requiring employees to sign employment contracts "in which they promised to maintain the source code in confidence," and storing the source code "on a secure server that could be accessed by only those employees who were given login credentials." Mot. at 3, 19 (citing Dkt. 29-6, ¶ 4). Defendants also argue that plaintiffs cannot prevail on their DMCA wrongful takedown claim, because defendants "conducted extensive and careful analysis before issuing DMCA takedown notices" and "even though . . . not required to," SWC "included an 11-page code comparison to accompany its DMCA takedown notices, demonstrating SWC's good-faith basis for concluding that [Myth of Empires] was an infringing material." Id. at 19–20 (internal citations omitted).

In opposition, plaintiffs argue that their claims are not "frivolous." Opp. at 10. Plaintiffs assert that the "allegedly similar code" constitutes "only small parts . . . of files from the tens of thousands of files and hundreds of thousands of lines that make up the works at issue" and that "this small amount of code cannot rise to the level of substantial similarity that SWC must show to prevail in this case." Id. at 11. Additionally, plaintiffs contend that defendants let "hundreds of people [have] full access to their source code" and that they have not "identified which specific trade secret source code files are allegedly present in Myth of Empires source code, or how these specific source code files derive economic value from the fact that they are generally not known." Id. at 13. Plaintiffs also argue that defendants' failure to register the PC version of ARK

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

"demonstrates that it materially misrepresented that it even owned rights that would justify its DMCA takedown notice." Id.; but see Beyond Blond Prods., LLC v. Heldman, 2021 WL 9315215, at *6 (C.D. Cal. Sept. 16, 2021) "Registration is not needed to submit a DMCA takedown notice.").[5]

   The Court finds that defendants have demonstrated at least a "reasonable possibility" they will obtain judgment in the litigation. While it remains premature for the Court to adjudicate a preliminary and developing factual record, defendants' positions with respect to plaintiffs' claims are not meritless as a matter of law at this juncture. First, defendants have a sound foundation to obtain judgment as to the copyright claims at issue. Although plaintiffs correctly identify that defendants will have to ultimately demonstrate "substantial similarity," given the complex nature of source code and the Ninth Circuit's recognition that "preliminary analyses show significant similarities in the exiting code," Dkt. 159, defendants at least have a "reasonable possibility" of doing so.[6] See, e.g., Mfg. Automation & Software Sys., Inc. v. Hughes, 2018 WL 3197696, at *9 (C.D. Cal. June 25, 2018) (rejecting the argument that copying of "24 lines of . . . code . . . which represented less than 1/100th of one percent of the overall codebase" is de minimis copying). As to the trade secret claims, defendants proffer sufficient evidence

---

[5] Additionally, the parties dispute the propriety and admissibility of the report of court-appointed expert Robert Zeidman, who concluded that Angela ████████████████████████████████████████████ See Mot. at 8–9; Opp. at 10–11. Plaintiffs challenge Zeidman's methodology and findings in more detail in connection with their pending motion to strike, which the Court address in a separate order. See Dkt. 197. For purposes of ruling on defendants' motion for a bond, however, the Court finds that there is a "reasonable possibility" that defendants will obtain judgment even if Zeidman's report were stricken from the record.

[6] Additionally, plaintiffs argue that "defendants have not adequately pled ownership of a valid copyright registration for the source code SWC alleges Angela infringed." Opp. at 9. While the Court addresses plaintiffs' motion for judgment on the pleadings and motion for leave to amend to add copyright registration invalidity claims in a separate order, see Dkts. 172, 186, for purposes of addressing the instant motion for bond, the Court finds that defendants have a "reasonable possibility" of establishing ownership over a valid copyright based on Snail's copyright registrations for the 2017 versions of Ark and the effective registration doctrine.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

showing a "reasonable possibility" that plaintiffs improperly obtained source code that SWC treated as a trade secret, including through confidential and security measures that plaintiffs ignore in their briefing. See ReadyLink Healthcare v. Cotton, 126 Cal. App. 4th 1006, 1012 (2005) (granting access to "over 100 people in the office working on the development and maintenance of that database" does not defeat trade secret status); InteliClear, LLC v. ETC Global Holdings, Inc., 978 F.3d 653, 660-61 (9th Cir. 2020) ("Confidentiality provisions constitute reasonable steps to maintain secrecy."). Finally, plaintiffs continue to offer no affirmative evidence that defendants made "knowing[] material[] misrepresentations" in their DMCA takedown requests. See 17 U.S.C. § 512(f).

Moreover, the Court's conclusion here is supported by its prior two orders denying plaintiffs' request for a TRO and preliminary injunction, in which the Court found that "defendants have offered a plethora of circumstantial evidence related to their counterclaims of copyright infringement and trade secret misappropriation sufficient to defeat plaintiffs' motion for a preliminary injunction" and that "plaintiffs fail[ed] to meet [their] burden of establishing either a probability of success on the merits or a serious question as to whether the law and facts 'clearly favor' plaintiffs' position." See Dkt. 34, Dkt. 56. This analysis was affirmed by the Ninth Circuit's opinion upholding the Court's denial of plaintiffs' motion for preliminary injunction. See Dkt. 159 ("The district court did not abuse its discretion . . ."); see also Simulnet, 37 F.3d at 574 (a "district court's order requiring security for fees and costs" is "reviewed for abuse of discretion").

Finally, the Court only makes this determination with respect to the "relatively low" reasonable *possibility* standard of Section 1030(b)—it does not conclude whether defendants have any higher "likelihood" of success on the merits.

    C.    **Whether the Simulnet discretionary factors weigh in favor of requiring a bond.**

As stated above, while defendants have satisfied the threshold requirement pursuant to Section 1030 to require plaintiffs to post a bond, "care must be taken not to deprive a plaintiff of access to the federal courts." Simulnet, 37 F.3d at 575–576. The Court must assess whether several discretionary factors weigh in favor of requiring a bond here, including the degree of probability/improbability of success on the merits, and the background and purpose of the suit, the reasonable extent of the security to be posted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

viewed from both the defendants' and plaintiffs' perspectives, as well as the absence of attachable property within the district, the conduct of the parties, and the plaintiff's ability to post the bond. Id.

Here, defendants argue that a bond is warranted under these discretionary factors. Defendants' overall justification for a bond is that they has a "high" chance of obtaining judgment in this case, and that a "judgment issued by this Court against [plaintiffs] would be impossible to enforce in the U.S. and difficult at the very least to enforce in China." See Mot. at 15 (citing Jingzhou Tao, 1 International Execution Against Judgment Debtors § 15:1 (August 2022 Update)) (describing the significant challenges in enforcing foreign judgments in China and noting that "the legal basis for enforcing foreign judgments has made little progress in the ensuing years"); see also id. at 16 (citing Montserrat Overseas Holdings, S.A. v. Larsen, 709 F.2d 22, 24-25 (9th Cir. 1983) (the district court's order requiring a bond was not an abuse of discretion where the plaintiff was "a foreign corporation with no assets within the United States"). Additionally, defendants argue that plaintiffs' conduct in this case demonstrates why a bond is necessary, because plaintiffs have "committed to scorched-earth litigation on peripheral issues that makes the case expensive, inefficient, and harassing." As a result, defendants argue that they have incurred significant costs and fees in this case.

On this basis, defendants seek a $3 million bond. Defendants state that they have already incurred more than $3.77 million in attorneys' fees, with a projected total amount of $8 million in attorneys' fees and $120,000 in costs. Mot. at 22–23. Additionally, defendants argue that such a bond amount would be reasonable because plaintiffs have engaged in "shell games" with respect to their financial condition. According to defendants, "although constantly claiming to be in dire financial straits, Angela has offered no evidence showing that its assertion is true." Id. at 21. Defendants cite to plaintiffs' statements that they have made over $3.4 million from selling Myth of Empires on Valve's Steam platform and their own website, and that plaintiffs have distributed the game on at least 11 other platforms. Finally, defendants contend that, notwithstanding plaintiffs' statements that Imperium Technology is "separate" from plaintiffs, Cheng Ting Kong "owns both Plaintiff Imperium and 68.94% of Imperium Technology shares" and that Imperium Technology features Myth of Empires as part of its game publishing business plan and has received revenues based on the game. Reply at 15–16 ("Angela's obfuscating web of corporate entities that send money to each other,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

[REDACTED] CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

while claiming separateness to avoid satisfying liabilities, underscores the need for a bond, to avoid more shell games if the Court issues a judgment awarding SWC its fees as the prevailing party.").

In opposition, plaintiffs argue that the discretionary factors weigh against imposing a bond. According to plaintiffs, "Angela filed this lawsuit to adjudicate SWC's copyright infringement and trade secret claims, defend itself against SWC's allegations, and get immediate relief from the Court" so that it would be inequitable for defendants to "now us[e] Angela's technical status as an out-of-state Plaintiff . . . to impose additional financial hardships on Angela, even though Angela is simply defending itself against SWC's claims." Opp. at 1. Plaintiffs emphasize that "Angela is suffering severe financial distress as a direct result of the fact that SWC essentially forced Myth of Empires off the market" and that plaintiffs cannot afford to post a $3 million bond.[7] Id. at 17–18. Plaintiffs additionally claim that—whatever the reasonable possibility of defendants prevailing in the litigation—plaintiffs' own claims and positions on the copyright and trade secret claims at issue are not inherently "frivolous," so the purpose behind Section 1030 in "preventing out-of-state residents from filing frivolous lawsuits against California residents" would not be achieved by imposing a bond here. Id. at 8 (quoting Yao v. Superior Court, 104 Cal. App. 4th 327, 331 (2002)).

Here, the Court finds that a bond is warranted given the likely difficulty defendants will have in order to execute a judgment against plaintiffs abroad in China. In assessing the discretionary Simulnet factors to determine the reasonableness of a bond, the Court believes it is appropriate to base such bond on plaintiffs' false takedown claim under the DMCA. First, it is the only affirmative claim for which plaintiffs seek damages, the other claims being declaratory judgments of non-infringement and non-misappropriation. For those declaratory claims, plaintiffs are functionally defendants, so it would be inequitable

---

[7] Defendants suggest that plaintiffs would only need to provide $30,000 to $210,000 (1 to 7% of the request amount) to post a $3 million bond amount using a surety company. Mot. at 22. Plaintiffs contend that they contacted the same surety companies mentioned by defendants, and that those companies represented to plaintiffs that they would need a $3 million cash deposit or an irrevocable letter of credit that would also cost $3 million. Opp. at 19. Defendants argue that this "only demonstrates that Angela is a 'credit risk,' which buttresses the need for a bond in this case." Reply at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

to require them to post a bond as to those claims. <u>Cf.</u> Mot. at 14 (citing cases in which parties accused of infringement successfully required the putative rightsholders to post a bond under Section 1030). Second, while defendants have a "reasonable possibility" of obtaining judgment as to all of plaintiffs' claims, the Court emphasizes that the "knowing material misrepresentation" standard for plaintiffs' DMCA claim poses a comparatively high threshold for liability, for which plaintiffs have already failed three times to show a likelihood of success on the merits. <u>See</u> Dkts. 34, 56, 159. Third, because plaintiffs' DCMA claim simply focuses on the good faith representations or knowing material misrepresentations that defendants made to Valve at the time of requesting the takedown, litigation on this claim will therefore be limited in scope with respect to fact and expert discovery in comparison to the copyright and trade secret claims and counterclaims at issue. Accordingly, a bond based only upon plaintiffs' DMCA claim would be appropriate in light of the <u>Simulnet</u> discretionary factors (*e.g.*, the degree of probability/improbability of success on the merits, the background and purpose of the suit, the reasonable extent of the security to be posted viewed from both defendants' and plaintiffs' perspectives).

    Defendants state that they have incurred $3.77 million in attorneys' fees and expect to incur a total of $8 million in attorneys' fees and $120,000 in costs over the course of this litigation. Mot. at 22–23 (citing Dkt. 176-3); <u>see also</u> Cal. Code Civ. Proc. § 1030 (the accompanying affidavit to the motion "shall set forth the nature and amount of the costs and attorney's fees the defendant has incurred and expects to incur by the conclusion of the action or special proceeding"). Accordingly, the Court believes that $750,000 can be considered a reasonable apportionment of the total projected attorneys' fees with respect to plaintiffs' DMCA claim. <u>See</u> <u>GmbH v. Cloud Imperium Games Corp.</u>, 2019 WL 4149337, at *4 (granting the defendants' motion for a bond but exercising discretion to reduce bond from the requested amount of $2,193,298.45 to $500,000 so that the amount "will protect the significant amount of fees that Defendants have already incurred, but will likely not jeopardize Plaintiff's ability to continue its participation in the action").

    At oral argument, all parties conceded that the Court has discretion in setting the amount of the bond. Counsel for plaintiffs argued that $750,000 was too high, but offered no facts in support of their position. Counsel for defendants argued that $750,000 was too low as an amount, but again, provided no facts relevant to support that claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-09552-CAS-SKx | Date | March 9, 2023 |
|---|---|---|---|
| Title | Suzhou Angela Online Game Technology Co., Ltd. et al. v. Snail Games USA Inc. et al | | |

Counsel for plaintiffs stated that plaintiffs could not post the $3 million bond requested by defendants, citing to the declaration of Angela's Vice President Shi Tao (Dkt. 193-10). Notwithstanding this assertion, the Court finds that requiring a $750,000 bond be posted is appropriate. See GmbH v. Cloud Imperium Games Corp., 2019 WL 4149337, at *4 ("Plaintiff disputes the reasonableness of both amounts, but does not provide the Court with a figure that it could reasonably post as a security—it requests only that 'the required bond be substantially decreased' if the Court 'finds a bond warranted.' Given the absence of such context, the Court shall require [plaintiff] to post a bond in the amount of $500,000."). This order is without prejudice to either side making a showing that a lesser or greater bond is appropriate.

### V.   CONCLUSION

In accordance with the foregoing, defendants' motion for bond is **GRANTED**. Plaintiffs are hereby directed to post a bond in the amount of $750,000 in the time provided by Cal. Code Civ. Proc. § 1030.

IT IS SO ORDERED.

Initials of Preparer     00 : 00
CMJ